## GREAT SOUTHERN LIFE INS. CO. v. JOHNSON. (No. 3113.)

Court of Civil Appeals of Texas. Amarillo. Nov. 21, 1928.

Rehearing Denied Feb. 6, 1929.

Vinson, Elkins, Sweeton & Weems, of Houston, for appellant.

R. S. Ragsdale, of Burkburnett, and O. J. Brannan, of Wichita Falls, for appellee.

HALL, C. J. On March 12, 1920, the appellant, Great Southern Life Insurance Company, issued to appellee, Johnson, who was then a merchant at Burkburnett, Tex., a life and accident insurance policy, which provided that the company would pay to the wife of .the insured at his death, upon compliance with the terms of the policy, the sum of $20,000. By stipulation hereinafter discussed, the company bound itself, under certain conditions, to pay the insured one-tenth of the face of the policy annually for ten years. On December 11, 1921, while the policy was in force, Johnson was injured by the accidental discharge of·a gun, resulting in the amputation of his right leg several inches below the hip joint. After his injury, he paid the annual premiums maturing on March 12, 1922, 1923, and 1924, respectively. He made no further payment of premiums.

On March 23, 1925, he filed his claim with the company for disability, insisting that he was disabled to the extent specified in the policy. The appellant refused payment of the claim. On March 30, 1926, he filed a suit to recover the first annual installment of $2,000, and also sued to recover the sum of $461.48, being the difference between $1,712.40, the amount of the three premiums paid by him after his injury, and a loan of $1,250.91, which had been made him by the appellant on the policy. A trial of that case resulted in a verdict and judgment in his favor for the sum of $2,461.40. The insurance company appealed from that judgment, resulting in an affirmance by this court, the opinion being reported in 294 S. W. 675. Application for writ of error to the Supreme Court was dismissed for want of jurisdiction.

The company failed to pay the installment of $2,000 alleged to be due under the terms of the policy on March 23, 1927, and appellee filed this suit November 19, 1927, to recover the installment, the statutory penalty of 12 per cent. and attorney's fees. The case was tried by the court, without a jury and on the 4th day of January, 1928, appellee recovered a judgment for the installment of $2,000, with legal interest thereon from March 23, 1927, together with $750 attorney's fees, and $240 penalty.

. The plaintiff alleged, in substance in this case, the issuance of the policy, the promise of the defendant to pay $20,000 in annual installments of $2,000 each for ten consecutive years upon proof that plaintiff had become totally and permanently disabled by reason of bodily injury or disease, and that the company further contracted that, upon the making of proof of such disability, to waive the payment of premiums thereafter becoming due and to pay such installments of $2,000 promptly each year during the continuance of such disability until the full amount of the policy was paid.

He further alleged that on the 23d day of March, 1925, he made proof of total and permanent disability within the meaning of the policy, that the defendant refused to accept such proof or to make payment, and in due time he filed his suit in the district court of Wichita county, to recover the amount due him under the policy, and did, on the 9th day of July, 1926, recover judgment for the first $2,000, which matured March 23, 1926; that the findings of the jury upon the facts submitted to them were to the effect that plaintiff sustained injury on the 11th day of December, 1921, totally disabling him; that such disability was permanent, and had been since the date of such injury, and that he would thereafter be totally and permanently disabled for the remainder of his life; that, under the provisions of the policy and the judgment entered in said cause, defendant became obligated and bound to pay him the sum of $2,000 per annum, accruing on the 23d day

of March of each year from and after the 23d day of March, 1926; that the former judgment had been duly paid, but the installment accruing on the 23d day of March, 1927 "has not been paid and is long past due and though often demanded, defendant has not paid the same or any part thereof, to plaintiff's damage * * * and by reason of the failure of defendant to pay said sum within thirty days after due demand," etc. Plaintiff further alleges that the policy provides that it should be tendered to the defendant annually for the purpose of indorsement thereon of the payments as they accrue, and that plaintiff has so tendered said policy, and here and now tenders it, and demands payment of said sums due him, together with interest, attorney's fee, and penalty, etc.

The insurance company answered by general demurrer, general denial, and by cross-action, alleging that the policy sued upon contained the following provisions:

"7. Waiver of premiums and payment of installments on total and permanent disability. (1) The company, by indorsement hereon, will waive payment of the premiums thereafter becoming due if the insured, before attaining the age of sixty years and after paying at least one full annual premium and before default in the payment of any subsequent premium, shall furnish proof satisfactory to the company that he has become wholly and permanently disabled by bodily injury or by disease so that he is and will be thereby permanently, continuously and wholly prevented from performing any work for compensation or profit or from following any gainful occupation. The premiums so waived will not be a charge against the policy, and the values and benefits as shown in the Table of Values and Surrender Options appearing hereon shall progress each year the same as if the premiums were paid in cash; and

"(2) The Company at the end of one year after receipt of satisfactory proof of such disability, provided such disability then exists, will pay to the insured one-tenth of the face amount of the policy and a like amount at the end of each year thereafter during the continuance of such disability until the face amount of the policy, less any existing indebtedness, shall have been paid. The policy must be returned to the company for the indorsement thereon of each payment.

"Each installment so paid shall reduce to that extent the amount of the policy, and the loan and cash surrender values and the amounts of paid-up and extended insurance, provided for under Section 9, shall be calculated for the reduced insurance on the basis employed in said Section 9.

"If the policy matures by death before the face amount shall have been paid in installments, the balance of the face amount, less any existing indebtedness, shall be payable in one sum. The Company shall have the right to apply upon any indebtedness which may exist against the policy so much of any installment payable hereunder as may be necessary to reduce such indebtedness to an amount equal to the then cash surrender value of the policy

"Notwithstanding proof of disability may have been accepted by the company as satisfactory, the insured shall at any time, on demand, furnish the company satisfactory proof of the continuance of such disability; and if the insured shall fail to furnish such proof or if it shall appear to the company that the insured is able to perform any work for compensation or profit, or to follow any gainful occupation, all premiums thereafter falling due must be paid in conformity with this contract; and provided further that if the amount of the insurance shall then have been reduced under this provision, such reduced amount of insurance shall thereafter be the face amount of the policy, and the premiums thereafter falling due will be reduced in proportion to the reduced amount of insurance, and all benefits under the policy will be reduced accordingly.

"The company shall have the right and opportunity to examine the insured's person, in case total disability is claimed, as often as it desires.

"Without prejudice to any other cause of disability, the entire and irrecoverable loss of the sight of both eyes, or the severance of both hands above the wrists, or of both feet above the ankles, or of one entire hand above the wrist and one entire foot above the ankle, will be considered as total and permanent disability within the meaning of this provision.

"None of the Disability Benefits above stated shall apply to any paid-up or extended insurance to which the Insured may become entitled under Section 9 of this policy.

"9. Non-forfeiture Provisions. If this policy should lapse on account of default in premium payments, after premiums shall have been paid for two full years, the Insured may within one month from the date of such default, elect: either,

"(a) to accept the cash surrender value, which will be an amount equal to the reserve on this policy at the date of default, computed according to the American Experience Table of Mortality with interest at the rate of three and one-half per cent. per annum, less any existing indebtedness to the company on this policy and less a surrender charge, which in no case shall be more than one per cent. of the amount insured by this policy; or,

"(b) To secure a paid-up policy payable at the same time and on the same conditions as this policy for such an amount as said Cash Surrender Value, as above defined, will purchase as a net single premium at the age of the Insured at the date of default, computed

according to the American Experience Table of Mortality with interest at the rate of three and one-half per cent. per annum. Loans may be obtained on such paid up policy subject to the provisions of Section 8, entitled 'Cash Loans' or it may be surrendered to the Company at any time for its Cash Surrender Value; or

"(c) to have insurance for the face amount of this policy continue in force from the date of default for such term as said Cash Surrender Value as above defined, will purchase as net single premium at the age of the Insured at the date of default, computed according to the American Experience Table of Mortality with interest at the rate of three and one-half per cent. per annum, but without the right to loans or cash surrender value.

"If the insured shall not within one month after such default surrender this policy to the company at its Home Office for the cash surrender value as provided in option (a), or for a paid-up policy as provided in option (b), the insurance will be automatically continued as term insurance as provided in option (c).

"2. Premiums. All premiums on this policy shall be payable in advance either at the Home Office of the Company or to an Agent of the Company upon the delivery of a receipt signed by the President, Vice-President or Secretary of the Company, and duly countersigned by such Agent. Unless otherwise provided, all premiums are payable annually, but, by contract in writing, they may be made payable in semi-annual or quarterly installments. Any unpaid part of the premium or premiums for the current policy year in which death occurs will be deducted from the amount payable hereunder. If any premium or any note or other obligation given therefor shall not be paid when due, this policy shall thereupon cease, except as herein provided."

It is further alleged that on or about the 28th day of February, 1924, the plaintiff borrowed the sum of $1,250.91, and pledged the policy sued upon, and for the loan executed his note for said amount on that date, promising on or before the 12th day of March, 1925, to repay said sum. The answer then sets out certain conditions and stipulations with reference to the loan, which have no application to the questions before us. It is further alleged that the only proof submitted by plaintiff that he was permanently and totally disabled was dated February 23, 1925; that, in fact, plaintiff was not wholly and permanently disabled from March 23, 1926, to March 23, 1927, being the period for which the installment sued for herein is sought; that, as a matter of fact, during such period plaintiff was engaged in a gainful occupation; that nothing was ever paid upon the abovementioned note, and no premium was paid after the execution of said note; that under the terms of the policy an annual premium of $570.80 was due March 13, 1925, March 13, 1926, and March 13, 1927. respectively, and that by reason of the plaintiff's failure to pay the note and each of the premiums when due, the policy lapsed except as to such right as plaintiff might have under stipulation No. 9 above; that plaintiff failed to make any election within one month after default in the payment of the note or either of the premiums as above stated; that by a judgment rendered in this court on the 9th day of July 1926, plaintiff recovered a judgment against defendant for the installment of $2,-000 due March 23, 1926, and the further sum of $461.49; that in said first case the issue was whether Johnson had become wholly and permanently disabled by bodily injury so that he was and would be thereby permanently, totally and wholly prevented from performing any work for compensation or profit or from following any gainful occupation.

It is alleged that an appeal was prosecuted by the company from that judgment and affirmed by this court and a writ of error denied by the Supreme Court. The company further alleges that, in order to secure said judgment, plaintiff testified, and, in fact, the jury found, that he was totally and permanently disabled within the meaning of the policy, that said finding of the jury was based upon a mistake of facts, in that plaintiff was not totally and permanently disabled, and that, since the trial of that case, new evidence exists, showing conclusively that the plaintiff was not totally and permanently disabled within the terms of the policy; that plaintiff has since been elected to the office of justice of the peace in Wichita county, and does now and has ever since January, 1926, held said office, and is actually performing the duties of his office for compensation and profit, thereby following a gainful occupation.

By supplemental petition, Johnson sets up the fact of the former judgment, the issues involved, and the finding of the jury that he was totally and permanently disabled; that said judgment is in all respects a final judgment; and that it is res judicata of the issues presented by the answer of the company in this case. By a subsequent pleading he sets out in detail the issues made by the pleadings in the first case, the terms of the decree entered by the court, and the estoppel of the company to urge the same matters in this case.

Appellant's first proposition is:

"A judgment which expressly reserves from its operation the decision of a question in issue is not res adjudicata on the issue so reserved."

And the second, which is submitted with it, is:

"A prior judgment rendered in favor of insured against an insurer for an annual installment then accrued, based upon a finding of the jury that the insured had been by an

injury permanently, continuously and wholly prevented from performing any work for compensation or profit, or from following any gainful occupation, is not res adjudicata as to any subsequent installment when said judgment expressly excludes from its determination the rights of the parties concerning such future installment."

The first judgment contained this recital:

"The Court further finds that the plaintiff is not entitled to recover judgment maturing the installments of $2,000.00 a year maturing in the future. This judgment in respect to future installments is without prejudice to the rights of either of the parties hereto in any litigation that may be had concerning said future installments."

It is a general rule that a judgment which expressly excepts or reserves from its consideration the right to take further proceedings in respect to certain matters is not res judicata of the matters there reserved, 34 C. J. 931; Burns v. Nichols (Tex. Civ. App.) 207 S. W. 158; Haralson v. St. Louis Southwestern Railway Co. (Tex. Civ. App.) 62 S. W. 788; but, on the contrary, the reservation itself is res judicata, White v. Bell (Tex. Civ. App.) 290 S. W. 849; Jones v. Wootton (Tex. Com. App.) 228 S. W. 142; Id. (Tex. Civ. App.) 204 S. W. 237.

In the first suit, the plaintiff sought to recover the first installment and in the alternative to mature all future installments. The court could not adjudicate the right to recover future installments because they were clearly not due, and a judgment as to matters which the court cannot for any cause properly render is not res judicata in a subsequent suit involving such matters. Teal v. Terrell, 48 Tex. 491; Seitz v. McKenzie, 4 Tex. Civ. App. 81, 22 S. W. 104; 34 C. J. 935, § 1339.

The effect of the recital in the judgment is to deny plaintiff the right to mature in that suit all the future annual installments, but without prejudice to his right to maintain successive actions upon them in the future as they mature. The court thereby dismissed from that suit all matters and issues relating to such future installments and properly so, because that part of the plaintiff's action was prematurely brought. N. Y. L. Ins. Co. v. English, 96 Tex. 268, 72 S. W. 58; S. W. Ins. Co. v. Curtis (Tex. Civ. App.) 200 S. W. 1162. 34 C. J. 777, § 1195, announces the doctrine in this language: "A judgment for defendant or an order dismissing the action for the reason that it was prematurely brought, either because the amount claimed is not yet due or because plaintiff has failed to perform some preliminary act necessary to prove the cause of action * * * will not bar another action for the same cause when the right of action becomes complete."

The contract of insurance is entire, but upon the happening of the contingencies alleged, the amount due became payable in installments at different times. A failure to pay any installment at maturity was a partial breach, and, as held in Ben C. Jones & Co. v. Gammel Statesman Publishing Co., 100 Tex. 320, 99 S. W. 701, 8 L. R. A. (N. S.) 1197, such breach "constituted a separate and independent cause of action." Howe v. Harding, 84 Tex. 74, 19 S. W. 363. While the court could by exception and reservation so frame the judgment that it would not be res judicata of plaintiff's right to recover upon future installments, he could not, and we do not think that he did, decree that either party was privileged to reopen and contest in subsequent suit any issue which had become res judicata in the first action. While he could exclude from the decree every cause of action prematurely asserted and not necessarily involved, he could not and did not prejudge the issues in a separate and independent action which might be thereafter instituted, because the language used "is without prejudice to the rights of either of the parties hereto in any litigation that may be had concerning said future installments." This language, it would seem, is gratuitous, because, under the circumstances, the court could not prejudice the rights of either party in litigation involving future installments. Any subsequent case must stand or fall upon its merits, and the rights of the parties must be determined in that action, and could not be prejudged in the first suit; so we sustain the first proposition. Cavitt v. Amsler (Tex. Civ. App.) 242 S. W. 246; Meacham v. O'Keefe (Tex. Civ. App.) 198 S. W. 1000.

The appellant cites Dobbs v. Order of United Commercial Travelers of America (Tex. Civ. App.) 241 S. W. 191, in support of its second proposition. That case is in the main different from the instant case. There the contract was entire, but the damages due under the policy were not payable in installments. The rule declared in all the cases we have found bearing upon this point is stated in 34 C. J. 844, § 1252, as follows: "A former judgment for plaintiff in one of a series of actions for money due by installments or other successive causes of action, although not a bar to a subsequent suit, will be final and conclusive evidence as to all points and questions actually or necessarily litigated and determined by it, such as the validity of the contract sued on and determining plaintiff's right to recover in a subsequent action on a like state of facts. Where, for example, an action is brought for one of a series of payments or series of notes, all based on the same consideration and defendant sets up a defense going to the whole of the original consideration, a judgment against him precludes him from setting up the same facts in defense to a subsequent suit on another note or installment. So where judgment is recovered for an installment of salary or wages, defenses adjudicated adversely to defendant

are concluded and cannot be set up in a subsequent action for another installment." The same doctrine is declared, citing illustrative cases, in 2 Freeman on Judgments (5th Ed.) pp. 1492, 1497, 1648.

■ The statement of facts shows that the judgment in the first case, which includes the verdict of the jury, was introduced in evidence, together with the opinion of this court on the former appeal, reported in 294 S. W. 675, and a stipulation of counsel to the effect that a writ of error had been prosecuted in said cause to the Supreme Court, where it was dismissed for want of jurisdiction. The plaintiff's original petition was also introduced in evidence. By reference to the record filed in this court on the former appeal and to the brief of counsel, we find that appellant insisted that appellee was not entitled to recover, because at that time he was following a gainful occupation, and showed that appellee had been elected justice of the peace in Wichita county. It does not appear that any question is urged in this appeal, which appellant failed to urge in the lower court or present to this court on the former appeal. The decision of this court, which affirmed the judgment in the former appeal, is therefore conclusive of all the defenses presented. The right of plaintiff to recover as against the defenses urged is res judicata, and, since that judgment was appealed from and affirmed by the judgment of this court, the issues there determined cannot be again contested in any subsequent action upon future installments. As stated in Crane v. L. & H. Blum, 56 Tex. 325, "the good of society and the preservation of rights and good order require that when once the rights of parties have been determined by the ultimate tribunal provided by law for their adjudication, the same should pass from the field of strife forever; any other rule would fill the court with causes which have once been determined, and render all rights of property uncertain and the most solemn judgments a mockery."

■■ As stated by this court in the case of Long v. Martin, 260 S. W. 327, a final judgment is as conclusive of questions of law litigated as it is of questions of fact, and that, when the judgment of the appellate court has been rendered and become final, it is not open to further question or discussion in the trial courts, and, although plainly erroneous in the judgment of those courts, must be accepted as binding and conclusive. Davis v. Cox (Tex. Civ. App.) 4 S.W.(2d) 1008; Kendall v. Mather, 48 Tex. 585; Hovey v. Shepherd, 105 Tex. 237, 147 S. W. 224. Amongst the numerous cases cited sustaining the text quoted above from 34 C. J. is Lorillard v. Clyde, 122 N. Y. 41, 25 N. E. 292, 19 Am. St. Rep. 470, which is cited in the Jones v. Gammel-Statesman Case, supra, and holds that each default in the payment of any installment may be the subject of an independent action; and that the construction placed upon the contract by the court in the first action estops the parties from subsequently insisting that successive actions may not be brought and independent judgments recovered for installments that were not due and not in the suit when the action to recover one thereof without including the others was commenced. It is further held that a judgment rendered on the merits is coextensive with the issues upon which it is founded, and is conclusive between the parties thereto, not only as to the matters actually proved, argued, and submitted for decision, but also as to every other matter directly at issue by the pleadings which the defeated party might have litigated; and that, while parol evidence may be received to show what was litigated, such evidence must be consistent with the record, and cannot be admitted to contradict it. 34 C. J. 874, § 1283; Wiese v. San F. Musical Fund Soc., 82 Cal. 645, 23 P. 212, 7 L. R. A. 577 and note, 2 Freeman on Judgments (5th Ed.) §§ 709, 774, 898; 2 Black on Judgments, §§ 749, 750; Jones v. Clark (Tex. Civ. App.) 250 S. W. 217. What has been said disposes of the third and fourth propositions.

■ By its fifth proposition, the appellant insists that appellee is not entitled to recover because of failure to comply with that provision of the policy which required him to return the policy to the company for the indorsement thereon of each payment. When payment was refused, there was no indorsement to make. Appellee was not required to present the policy for indorsement of a payment thereon when he knew no payment would be made. A party is not required to do a vain thing. Creager v. Beamer Syndicate (Tex. Civ. App.) 274 S. W. 323.

■ The next three propositions relative to the right of appellee to recover the statutory penalty and attorney's fees insist that the allegations of the petition with reference to demand for payment are insufficient. It will be seen, from the above quotation from the petition, plaintiff alleged that the sum due "has not been paid and is long past due and though often demanded, defendant has not paid the same and that by reason of defendant's failure to pay said sum within thirty days after due demand" he was entitled to recover the penalty and attorney's fees. He further alleged that $1,500 as attorney's fee was a reasonable and necessary expense incurred by him. We think these allegations are sufficient to show a demand and a failure to pay within 30 days after demand, as well as the allegations that the attorney's fee is reasonable and necessary. This court has held in Liberty Life Insurance Co. v. George Moore, 10 S.W.(2d) 178, that it was not necessary for the plaintiff to allege the date upon which he demanded payment, hav-

ing alleged a failure and refusal to pay for more than 60 days prior to the filing of the suit.

The next contention is that in a suit for $2,000, where the proof is that a reasonable attorney's fee would be $400 or $500, a judgment for $750 attorney's fee is excessive. We sustain this proposition, and think that more than $500 attorney's fee should not have been allowed. If the appellee will enter a remittitur of the amount of his attorney's fee over and above $500, within 15 days, the judgment will be affirmed; otherwise it will be reversed and remanded.

Affirmed upon condition of remittitur.