**LOOMIS LAND & CATTLE CO., INC., et al., Appellants,**

v.

**D.D. WOOD, et al., Appellees.**

**No. 9339.**

Court of Appeals of Texas, Texarkana.

Sept. 24, 1985.

Rehearing Denied Oct. 15, 1985.

Royal H. Brin, Jr., Strasburger & Price, Richard F. Loomis, Jr., Dallas, for appellants.

Arthur E. Moers, Jr., Carthage, Thomas W. Bishop, Sevier, Yerger & Bishop, Tallulah, for appellees.

Before CORNELIUS, C.J., and BLEIL and CHADICK, JJ.*

* Honorable T.C. Chadick, Justice, Supreme Court   of Texas, Retired, sitting by Assignment.

CORNELIUS, Chief Justice.

Loomis Land Company and Richard F. Loomis, Jr. appeal from a judgment against them for $660,211.70 and foreclosure of a purchase money lien on the ABC Ranch in Harrison County.

This cause began as a suit by John Sharp against Loomis, the Loomis Company, and Wood and Osborne, wherein Sharp claimed an interest in the ABC Ranch. Trial of the suit began in August of 1975. During trial the parties announced in open court that they had settled the controversy and that Sharp was taking a nonsuit. Pursuant to that announcement, the jury was discharged. On September 9, 1975, Wood and Osborne filed a cross-action against Loomis and the Loomis Company to recover the balance due on promissory notes given by Loomis when Wood and Osborne sold the ABC Ranch to the Loomis Company. On September 15, 1975, Sharp filed a formal motion for nonsuit which was granted. On December 15, 1975, Loomis and the Loomis Company answered on the merits in the Wood/Osborne cross-action, and filed their own cross-action against Wood and Osborne seeking affirmative relief.[1] On August 7, 1984, judgment was rendered for the Wood/Osborne group and against Loomis and the Loomis Company on their cross-action.

■ Loomis first contends that the judgment against him was improper because when the Wood/Osborne cross-action against him was filed, Sharp's nonsuit was already effective (having been orally announced in open court), and thus there was no suit in existence to which the cross-action could attach. We disagree. If there was no suit to which a cross-action could attach, the Wood/Osborne pleading contained all the essentials of a separate claim and could be maintained as an independent suit. The fact that it was filed and docketed as part of a suit no longer in existence did not defeat its efficacy as an independent suit, especially since Loomis answered

it, sought affirmative relief in it, and participated in it for nine years without raising an issue as to its validity as an action. An analogous situation was involved in *Leach v. Brown*, 156 Tex. 66, 292 S.W.2d 329 (1956). The misnomer of the pleading was not fatal. Its substance controls rather than its title. 2 R. McDonald, *Texas Civil Practice in District and County Courts* § 5.05 (1982), and cases there cited.

■ Loomis also argues that the cross-action was ineffective as an independent suit because citation on it was not issued and served, but since Loomis voluntarily answered the pleading, citation was not necessary. Tex.R.Civ.P. 121; *West v. City Nat'l Bank of Birmingham*, 597 S.W.2d 461 (Tex.Civ.App.—Beaumont 1980, no writ).

■ Loomis contends that the cross-action was a nullity because it was not signed. Wood and Osborne conceded that their cross-action was actually a xerox copy of the original, but the jury found that Robert O'Donnell did sign the original of the pleading as Wood and Osborne's attorney. Loomis contends there is insufficient evidence to support the jury's finding. The thrust of his argument on this question concerns O'Donnell's testimony in which he denied signing the cross-action. Nevertheless, Jim Ammerman, who had represented Sharp and who was to represent Wood and Osborne in the cross-action, testified that he prepared the original cross-action and he actually saw O'Donnell sign the pleading. Further, Wood testified that O'Donnell was his and Osborne's attorney, and that they had authorized him to file the cross-action on their behalf. O'Donnell himself admitted in a sworn disclaimer that he represented Wood and Osborne, and that Ammerman was his co-counsel. Thus, even if O'Donnell did not sign the pleading, the irregularity was not fatal. *See* 2 R. McDonald, *Texas Civil Practice in District*

---

1. The original defendant Ilar Osborne died during the suit, and his heirs were substituted as parties.

*and County Courts* § 5.13 (1982), and cases there cited.

Loomis also challenges the jury finding that the Loomis Company was his alter ego as being supported by legally and factually insufficient evidence.[2]

The sale of the ABC Ranch from Wood and Osborne was to the Loomis Company, but the six promissory notes representing part of the purchase price were signed by Loomis without any corporate indication. In order to impress the ranch with an equitable lien to secure the notes, Wood and Osborne alleged that the Loomis Company was Loomis' alter ego. Although Loomis testified that upon incorporation he only owned forty-six to forty-eight percent of the stock in the company and that family members owned the remainder, income tax returns showed Loomis owned all of the stock. John Sharp, the manager of the ranch, testified that he had never heard of the Loomis Cattle Company and that Loomis told him that he (Loomis) owned the ranch. Checks for Sharp's salary and other expenses were from Loomis individually rather than from the corporation. Moreover, Wood testified that he and Osborne relied on Loomis' personal financial statements of net worth in making the sale, and looked to him for payment of the notes even though the deed was to the cattle company. Wood also testified that Loomis told him he might want the title to go in his own name or in the company's name, and that he owned several corporations for tax purposes. Wood stated that he did not care what name Loomis used to receive the title.

■ Where a corporate entity is owned or controlled by an individual who operates the company in a manner indistinguishable from his personal affairs and in a manner calculated to mislead those dealing with him to their detriment, the corporate fiction may be disregarded in order to prevent fraud. *Sagebrush Sales Co. v. Strauss*, 605 S.W.2d 857 (Tex.1980). Considering the record as a whole we find sufficient evidence to support the jury finding of alter ego. *Sagebrush Sales Co. v. Strauss*, supra.

■ Finally Loomis contends that the jury's failure to find that Wood and Osborne fraudulently misrepresented their interest in the property is against the great weight and preponderance of the evidence.

In 1966, Wood and Osborne executed a paper which stated they "had assigned a one-third interest in the ABC Ranch" to John Sharp. The paper is not in the form of a deed, and contains several provisions detailing how profits and expenses will be divided among Osborne, Wood, and Sharp. The jury found that Wood and Osborne represented to Loomis that they were the sole owners of the ranch, but the jury failed to find that such representation was false or resulted in a failure of consideration.

Wood testified that the paper he and Osborne assigned to Sharp was only an assignment of an interest in the profits from the ranch and not an assignment of an interest in the title. As such testimony was not to contravene the terms of the writing but to explain them, it was properly received in evidence. 2 R. Ray, *Texas Law of Evidence Civil and Criminal* § 1681 (Texas Practice 1980). In failing to find that the representation of sole ownership was false, the jury agreed with Wood and Osborne's evidence that they had only assigned an interest in the net profits of the ranch to Sharp. Such a finding has some support in the evidence, and we do not find it so against the weight and preponderance of the evidence as to be manifestly unjust.

For the reasons stated, the judgment of the trial court is affirmed.

GRANT, J., not participating.

---

2. Rather than submitting jury issues on the facts which would authorize a conclusion of alter ego, the court submitted the ultimate issue to the jury with instructions as to the facts which could be considered. No objection was made to the form of submission.