LAMAR SAVINGS
ASSOCIATION, Relator,

v.

The Hon. Frank O. WHITE, Judge of
the 295th District Court of Harris
County, Respondent.

No. 01-87-0259-CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 21, 1987.

J. Graham Hill, Houston, for relator.

Daniel Kistler, Robert L. Collins, Robert
L. Collins & Associates, Houston, for re-
spondent.

Before DUGGAN, JACK SMITH and
HOYT, JJ.

OPINION

DUGGAN, Justice.

This case arises from a suit filed in the
295th District Court of Harris County by
Meyerland Company and Mike Adkinson
(hereafter "Meyerland") against Lamar
Savings Association and related parties
(hereafter "Lamar"). Relator, Lamar,
seeks writs to prohibit respondent, 295th
District Court Judge Frank O. White, from
entering further orders in the case, to com-
pel respondent to withdraw orders he has
already issued, and to compel respondent to
grant a plea in abatement. The writs of
prohibition and mandamus are conditionally
granted.

The underlying facts of this case are
lengthy and complex. Except as set out
below, a recitation of most of the facts is
unnecessary to the disposition of these pro-
ceedings.

On July 22, 1986, Lamar filed suit
against Meyerland in the 345th District
Court of Travis County. The suit claimed
that Meyerland had defaulted on a promis-
sory note payable to Lamar in the principal

amount of $58 million on January 9, 1986. On July 21, 1986, Lamar filed suit against CDR Investments, Inc. (hereafter "CDR") in the 126th District Court of Travis County, and on July 29, 1986, Lamar filed suit against Brown Col Investments, Inc. (hereafter "BCI") in the 250th District Court of Travis County. The suits claimed that CDR & BCI were in default on promissory notes payable to Lamar. Meyerland was not a party to the CDR and BCI suits, and it was stipulated that Meyerland does not own or control CDR or BCI. The properties securing the Meyerland, CDR, and BCI notes were posted for an August non-judicial foreclosure by Lamar.

On August 4, 1986, Meyerland filed suit against Lamar in the 295th District Court of Harris County, alleging breach of contract, breach of confidential fiduciary duties, estoppel, usury, duress, and tortious interference. Meyerland pleaded for a temporary restraining order and a temporary injunction with respect to the foreclosure sales, and for money damages with respect to the allegations of tortious interference and usury. The petition factually alleged: (1) that Lamar agreed to extend the note to April 5, 1986, and that in reliance on that agreement, Meyerland paid Lamar $192,837.25 on March 31, 1986; (2) that Lamar agreed to extend the note for one year thereafter, and breached that agreement by wrongfully accelerating, by demanding full payment, and by giving notice of its intention to foreclose;[1] (3) that when the note was originally executed, there existed a confidential relationship between Meyerland and Lamar, which caused Lamar to assure Meyerland that Lamar would continue to refinance the principal and interest of the note on an annual basis, despite contrary language in the written agreement;[2] and (4) that Lamar made unconscionable demands on Meyerland, "seeking to divest itself of properties which LAMAR had taken by foreclosure, and also to require [Meyerland] to make payments on loans which were not obligations of [Meyerland]," as a condition of extending the note.

On August 8, 1986, Lamar filed a plea in abatement seeking to abate or dismiss the Harris County action on the ground that the Travis County courts had already acquired dominant jurisdiction over the parties and controversy by virtue of the previously filed suits. Respondent denied Lamar's plea in abatement.

On January 26, 1987, respondent signed a temporary injunction prohibiting Lamar: (1) from taking any steps to foreclose on the Meyerland, RDL Development, Inc. (hereafter "RDL"), BCI, and CDR properties; (2) from further declaring any default or acceleration on the indebtedness secured by those properties; and (3) from bringing or maintaining any action against Meyerland in any other court on any of the indebtedness secured by those properties.

The court in which suit is first filed acquires dominant jurisdiction over the subject matter and parties of the suit, to the exclusion of other coordinate courts, *Curtis v. Gibbs*, 511 S.W.2d 263, 267 (Tex. 1974); *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063 (1926), and no other court in which a subsequent suit is filed has the power to interfere. *Johnson v. Avery*, 414 S.W.2d 441 (Tex.1966).

In *V.D. Anderson Co. v. Young*, 128 Tex. 631, 101 S.W.2d 798 (1937), the court held that:

> As a general rule, in order for the court where suit is first filed to have prior jurisdiction over the court where it is subsequently filed, the first court must have all necessary parties before it, or must have power to bring them before it. While, as a general rule, a suit is commenced by filing a petition with the bona fide intention to prosecute it to judgment, still the mere physical filing of the petition is not sufficient to oust the court in which the same suit is subsequently filed of active jurisdiction.

*Id.*, 128 Tex. at 637, 101 S.W.2d at 800–801.

We reject respondent's contention that there is not identity of parties because

---

1. We note that at the temporary injunction hearing, Meyerland contended only that Lamar had agreed to extend the note until January 9, 1987.

2. We note that there was no evidence supporting this allegation at the temporary injunction hearing.

Meyerland has not been served with citation in the Travis County suit, and is therefore not subject to the jurisdiction of the Travis County court.

The record reflects that citation was issued on July 22, 1986, in the Travis County suit, the same day that suit was filed; that out-of-county service of the citation was unsuccessfully attempted on four different days between July 24, 1986, and July 30, 1986; that the citation was returned unserved by the Harris County constable; and that Judge White enjoined Lamar from proceeding in the Travis County suit on August 4, 1986, by issuing a temporary restraining order.

In *Russell v. Taylor*, 121 Tex. 450, 49 S.W.2d 733 (1932), the plaintiff in the first action, a suit to cancel a note, directed the clerk not to issue citation unless directed to do so. Four days later, the defendant in the first action commenced a second action in another county, seeking to enforce and collect the note. Plaintiff number one filed a plea in abatement, and plaintiff number two filed a sworn controverting affidavit alleging that plaintiff number one did not intend to issue process and prosecute the suit, but rather filed the first action only to prevent plaintiff number two from filing the latter suit on the note. The Texas Supreme Court held that the controverting affidavit raised a question of fact that was to be decided exclusively by the judge in the second suit.

Unlike the circumstances in *Russell*, there is no indication in the present record that Lamar withheld issuance of citation in the Travis County suit or acted in any manner to create a fact issue as to Lamar's bona fide intent to obtain service and to prosecute the suit. To the contrary, the record reflects that Lamar used the utmost diligence to obtain prompt issuance and service of citation, and was prevented from pursuing substitute service of citation by the restraining order and injunction issued by Judge White.

■ We hold that Lamar demonstrated a bona fide intention to prosecute the suit to judgment, and that the Travis County court had the power to bring all necessary parties before the court.

■ Next, respondent contends that the Harris County suit involved controversies that were separate and distinct from the Travis County suit. Tex.R.Civ.P. 97(a) provides that:

A pleading shall state as a counterclaim any claim ... if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim....

Meyerland's factual allegations in the Harris County suit center around whether Lamar agreed to extend the promissory note until January 1987. Based on an identical factual foundation, Meyerland alleged causes of action for breach of contract, breach of fiduciary duties, usury, duress, estoppel, and tortious interference.

In *Connell v. Spires*, 264 S.W.2d 458, 459 (Tex.Civ.App.—Eastland 1954, no writ), the court held that a breach of contract claim was a compulsory counter-claim to the plaintiff's suit to collect on the balance due under the contract.

In *McWilliams v. Gilbert*, 715 S.W.2d 761, 764 (Tex.App.—Houston [1st Dist.] 1986, no writ), we held that a claim of breach of fiduciary duties was a compulsory counterclaim to the plaintiff's suit to collect under an indemnity agreement because the breach of fiduciary duties was "inextricably interwoven" with the ultimate issue of whether the defendant was liable under the indemnity agreement.

In *Madden v. Harlandale Bank*, 574 S.W.2d 590, 591 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.), the court held that a claim of usury was a compulsory counterclaim to a suit on the note, and that the failure to raise the usury claim in the primary suit was res judicata to a subsequent claim for usury.

Meyerland's claims of duress and estoppel belie respondent's contention that the subject matter of the suits are not "inextricably interwoven." Tex.R.Civ.P. 94 expressly provides that duress and estoppel are affirmative defenses. Moreover, Meyerland did not seek any ultimate relief with

respect to these claims, and the claims were based on the same factual foundation as all other claims raised by Meyerland in the Harris County suit.

Finally, Meyerland's allegations of tortious interference are "inextricably interwoven" to its ultimate liability on the note, because Meyerland sought to restrain the foreclosure sale on the basis that Lamar had tortiously interfered with its business dealings as a condition to extending the note.

We disagree with respondent's conclusion that the remedy of restraint of the foreclosure sale allows Meyerland to maintain a separate action in Harris County. In *Great Oil Basin Securities Corp. v. Union Nat'l Bank*, 579 S.W.2d 322 (Tex.Civ. App.—El Paso 1979, writ ref'd n.r.e.), the court implicitly held that a suit on a note was a compulsory counterclaim to a suit to restrain a foreclosure, because the resolution of issues necessary to the primary suit would be dispositive to the validity and enforceability of the note.

Even if a suit on the note and foreclosure are cumulative remedies, it does not follow that Meyerland may maintain independent suits with respect to each. By definition, the foreclosure arises from the alleged default on the note, and, in the instant case, each of Meyerland's claims in the Harris County suit was based on its allegations that the note was not in default because of Lamar's actions. Essentially, each remedy is dependent on an "inextricably interwoven" factual basis, thereby vesting the Travis County court with dominant jurisdiction.

Similarly, respondent disingenuously contends that Lamar may still seek money damages from Meyerland in the Harris County action, just as it sought to do in the Travis County suit. Indeed, if respondent's orders are allowed to remain in effect, Lamar would be compelled to assert its claim for collection of the note in the Harris County suit, because a judgment in the Harris County suit would be res judicata to the present enforceability of the note in any other action. Conversely, any judgment in the Travis County suit would be res judicata to each of Lamar's causes of action in the Harris County suit.

Even a cursory reading of Meyerland's pleadings reveals that the Harris county suit is based on factual occurrences over which the Travis County court had acquired dominant jurisdiction. Respondent had a clear legal duty to abate Meyerland's action against Lamar. His failure to so rule constitutes a clear abuse of discretion because "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985); *Abor v. Black*, 695 S.W.2d 564 (Tex.1985). We reiterate the view expressed in *Houston North Properties v. White*, 731 S.W.2d 719, 722, (Tex.App.—Houston [1st Dist.] 1987).

> This move to manipulate jurisdiction away from another district court is repugnant both to the rules of trial and appellate procedure, and to the spirit behind their enactment that dictates order and efficiency among courts with concurrent jurisdiction. This conduct is a threat to the independence and order of our judiciary. It must cease.

We hold that the 345th, 126th, and 250th District Courts of Travis County have dominant jurisdiction of the parties and the claims, and that the orders by respondent wrongfully interfered with those courts' jurisdiction. Accordingly, the following writs shall conditionally issue: (1) We grant Lamar's request for a writ of prohibition and order respondent to take no further action with respect to cause number 86–34956, except as herein provided; (2) we further grant Lamar's request for a writ of mandamus and order respondent to withdraw all orders previously issued in cause number 86–34956 and to grant Lamar's plea in abatement. The writs will issue only in the event that respondent fails to comply with this order.