TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-98-00561-CV


NO. 03-98-00624-CV







Smithville Independent School District and Steven Tom, Appellants



v.



Jerry Hoskins, Appellee




AND



Jerry Hoskins, Appellant


v. 


Smithville Independent School District and Michael Moses, 

Commissioner of Education, Appellees






FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT 

NOS. 22,264A & 22,264, HONORABLE JOHN L. PLACKE, JUDGE PRESIDING






 The Smithville Independent School District (the "District"), following the
recommendation of Steven Tom, its superintendent, terminated Jerry Hoskins's continuing
teacher's contract based on a finding of good cause. When Hoskins's appeal to the Commissioner
of Education (the "Commissioner") was unsuccessful, he brought suit in district court, seeking
judicial review of the Commissioner's decision and raising three independent claims against the
District and Tom: (1) breach of contract/wrongful discharge; (2) defamation; and (3) intentional
infliction of emotional distress. In response, the District filed a plea to the jurisdiction that was
denied by the district court. The court rendered a separate final judgment that affirmed the
Commissioner's decision and severed Hoskins's administrative claim against the Commissioner
from his independent claims against the District and Tom. 

 On appeal, Hoskins challenges the district court's judgment affirming the
Commissioner's decision. The District and Tom, in a separate cause, appeal the court's denial
of the plea to the jurisdiction. We will affirm the district court's action in both respects.


FACTUAL AND PROCEDURAL BACKGROUND

 Hoskins, an agriculture teacher at Smithville High School ("SHS"), was employed
pursuant to a continuing contract with the District. (1) In November 1996, Hoskins, Christina
Gaytan, and Tab Young, also teachers at SHS, traveled to Academy High School to participate
as judges in a Future Farmers of America ("FFA") area competition. When the judges gathered
at Academy , Hoskins told Young that the examination to be used in the Academy competition
was also going to be used the next day in a competition in Hutto that included SHS students. 
Hoskins and Young then separated to judge their respective competitions. Gary Adams, a teacher
from a different district, noticed some copies of that day's exam lying on a table in the judges'
lounge. Believing that these exams were to be distributed as future study material, Adams picked
up two copies and handed one to Hoskins. After the day's competition was complete, Hoskins
told Young and Gaytan that he had a copy of the test and was ninety-nine percent sure that it
would be used the next day in Hutto. When Adams learned that the test was to be used the next
day in the Hutto competition, he returned his copy. 

 The next morning, Hoskins told Lance Hanson, another teacher at SHS, that he had
"the tests." Hoskins then asked Hanson, Gaytan, Young, and a student at SHS to help him fill
out the answers to the exam. Believing it to be a practice exam for study purposes, they agreed. 
Throughout the morning, they supplied answers to the questions. At one point, Hoskins told a
special-education aide that he thought that SHS would do well in the competition and was ninety-nine percent sure that he had the test. After most of the questions were answered, Hoskins found
an SHS student scheduled to compete that day, gave her a copy of the answered exam, and asked
her to review it and distribute copies to her classmates.

 On the bus to the Hutto competition, three SHS students studied the completed
exam. Hoskins advised the students against making a perfect score if the same exam were
administered at the competition. When they reached Hutto, Hoskins told the students to put the
examination away and advised them not to let anyone see it; he also told two of the students not
to tell anyone else that they had seen the exam. Following the competition, the students told
Hoskins and some accompanying teachers that the Hutto exam was the same exam distributed to
them by Hoskins. Hoskins cautioned one of the students not to let anyone know that they had a
copy of the test prior to the competition. After the competition, a student asked Hoskins if he
could get another exam for the students to study from before the next competition. Hoskins told
the student that no one needed to know what had happened. 

 The next day, Hanson, Young, and Gaytan informed the SHS principal about the
exam and the events surrounding the Hutto competition. The District's superintendent placed
Hoskins on administrative leave with pay until an investigation of the matter could be resolved. 
In December, the superintendent informed Hoskins by letter that upon his recommendation, (2) the
District's board of trustees (the "Board") proposed to terminate Hoskins's contract for good
cause based on his conduct in November. In response, Hoskins requested a hearing before a
hearing examiner certified by the Commissioner. See Tex. Educ. Code Ann. §§ 21.251(a)(1),
.252, .253 (West 1996) ("Education Code"). After the hearing, the examiner found that good
cause existed for the dismissal or suspension of Hoskins and recommended to the Board that
Hoskins be suspended without pay for the remainder of the school year. (3) The Board, however,
voted to terminate Hoskins's contract. 

 Hoskins appealed the Board's decision to the Commissioner, who affirmed the
Board's action. Hoskins then filed suit in district court, seeking judicial review of the
Commissioner's decision (the "administrative appeal") and raising independent claims for breach
of contract/wrongful discharge, defamation, and intentional infliction of emotional distress
("independent claims"). In response to Hoskins's independent claims, the District filed a plea to
the jurisdiction, arguing that the district court lacked subject-matter jurisdiction over Hoskins's
breach-of-contract/wrongful-discharge claim because any further proceedings would necessarily
involve factual disputes already resolved at the administrative level and Hoskins had failed to
exhaust his administrative remedies. 

 The district court denied the District's plea to the jurisdiction. The court, in a
separate final judgment: (1) severed Hoskins's independent claims from the administrative appeal,
and (2) affirmed the decision of the Commissioner, concluding that the decision was reasonably
supported by substantial evidence. Hoskins challenges the district court's final judgment affirming
the Commissioner's decision in the administrative appeal. In a separate appeal, the District and
Tom contend that the court erred in denying the District's plea to the jurisdiction.


DISCUSSION

Administrative AppealDue Process

 Hoskins complains in his first issue that he was denied due process because the
Board ignored and overruled certain of the hearing examiner's findings and thus became the
ultimate decisionmaker in its own case. See In re Murchison, 349 U.S. 133, 136 (1955) (to
ensure fair trial, a basic requirement of due process, "no man can be a judge in his own case and
no man is permitted to try cases where he has an interest in the outcome"). However, due process
is a "term that 'negates any concept of inflexible procedures universally applicable to every
imaginable situation.'" Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n, 426 U.S.
482, 494 (1976) (quoting Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961)). In
Hortonville, the Supreme Court addressed whether due process prohibits a school board from
deciding to dismiss teachers admittedly engaged in striking. Id. at 488. The Supreme Court
suggested that to prevail the teachers would have to demonstrate that the board members had some
personal or official stake in their decision to terminate the teachers that might create a conflict of
interest. See id. at 491-92; see also Gilder v. Meno, 926 S.W.2d 357, 364 (Tex. App.--Austin
1996, writ denied) (no due process violation where no evidence established board members' bias).

 The Education Code provides a two-step process for deciding whether to terminate
a teacher's continuing contract. See Education Code §§ 21.251-.260. When a teacher requests
a hearing, a hearing examiner conducts a hearing and makes a written recommendation that must
include findings of fact and conclusions of law and may include a proposal for granting relief. 
See id. § 21.257. The board of trustees of the district may generally reject or change the hearing
examiner's conclusions of law or proposal for granting relief. See id. § 21.259(b). The board,
however, may reject or change a finding of fact only if, after reviewing the record of the
proceedings, the board determines that the finding is not supported by substantial evidence. See
id. § 21.259(c). 

 The examiner concluded that good cause existed to either discharge or suspend
Hoskins because a preponderance of the evidence established that Hoskins "engaged in conduct
failing to meet the accepted standards of conduct for the profession as generally recognized and
applied in similarly situated school districts in this state." The examiner also submitted a proposal
for granting relief, recommending that the Board suspend Hoskins without pay for the remainder
of the school year. While the Board accepted the examiner's findings of fact, it rejected his
proposal for granting relief. See id. § 21.259(a), (b). The Board also rejected as unnecessary
certain of the examiner's conclusions of law that supported his suspension proposal and instead
terminated Hoskins's contract. 

 The legislature gives local school boards broad discretion to determine the proper
sanction in light of the factual findings of a hearing examiner, subject only to substantial-evidence
review. See id. §§ 21.303(b)(2), .307(f). "Local management and control of public schools is
a primary and longstanding legislative policy evident throughout the education statutes." Ysleta
ISD v. Meno, 933 S.W.2d 748, 753 (Tex. App.--Austin 1996, writ denied). Vesting this
policymaking function in the local board allows the board to deal with the everyday problems of
its district and preserves its control over school-district affairs. See Hortonville, 426 U.S. at 495-96. The record before us reflects no evidence that any member of the Board was biased against
Hoskins. See Gilder, 926 S.W.2d at 364. The hearing was conducted and the Board's decision
was made in compliance with the Education Code. Due process did not guarantee Hoskins that
the decision to terminate his contract would be made by a body other than the Board. See
Hortonville, 426 U.S. at 497. Hoskins has failed to demonstrate that the Board's decision to
terminate his contract "was infected by the sort of bias" that disqualifies the Board as
decisionmaker. Id. at 496. 

 Therefore, we overrule Hoskins's first issue.


Local Record

 By his second and third issues, Hoskins complains that the District did not properly
file, and the Commissioner did not properly review, the record of the local hearing ("local
record"). See Education Code § 21.301. When a teacher files a petition for review with the
Commissioner, the school district must file the local record within twenty-one days. See id.
§ 21.301(b). The Commissioner is required to review the local record. See id. § 21.301(c).

 Hoskins filed his petition for review with the Commissioner on March 13. On
April 2, twenty days later, the local record was filed with the Commissioner. On April 30, after
the deadline for filing the local record had passed, the District sent the Commissioner a letter
enclosing several exhibits that were part of the local record. The District stated that the exhibits
"may not have been included in the local record" previously filed with the Commissioner. The
same day, the Commissioner rendered his decision affirming the Board's termination of Hoskins.

 This evidence does not establish that the Commissioner did not review the entire
record or that the District did not timely file the local record. The District's letter did not admit
that the local record filed with the Commissioner was incomplete; rather, the District advised that
the exhibits may not have been included in its original filing. Hoskins submitted no evidence to
the contrary. Moreover, we cannot speculate that the Commissioner did not review the entire
local record simply because he rendered his decision on the same day he received the District's
letter. 

 Were we to assume that Hoskins is correct, his issue still fails. The Education
Code provides that the reviewing court "may not reverse a decision of the commissioner based
on a procedural irregularity or error by . . . a board of trustees . . . or the commissioner unless
the court determines that the irregularity or error was likely to have led to an erroneous decision
by the commissioner." Id. § 21.307. The portions of the local record submitted with the
District's letter were filed with the Commissioner before he rendered his decision. The record
reflects that these exhibits were cumulative of the testimony and exhibits that were undeniably
timely filed. We cannot say that the error, if any, led to an erroneous decision by the
Commissioner.

 We overrule the second and third issues.


Notice of the Grounds for Termination

 Hoskins complains in the next two issues that the grounds asserted for the
termination of his contract changed throughout the various stages of the administrative process. 
Specifically, Hoskins asserts that he was accused by the superintendent of "wrongfully obtain[ing]
a test," while the hearing examiner found that he "knew or had a strong expectation" that the test
he obtained would be administered in the Hutto competition, and the Commissioner found that
Hoskins "knew" the same test would be administered in the Hutto competition. As a result,
Hoskins argues that (1) he was denied due process because he did not have adequate notice to
defend himself and (2) the Commissioner committed reversible error by "denying [his] appeal
based on conduct" not found by the hearing examiner.

 Due process requires at a minimum the right to notice of the allegations against
which party in Hoskins's position will be called upon to defend. To ensure that this guarantee is
meaningful, the notice must be "relative to the issues of fact and law which will control the result
to be reached by the administrative tribunal," affording all parties the opportunity to respond and
present evidence and argument on all issues involved. Madden v. Texas Bd. of Chiropractic
Exam'rs, 663 S.W.2d 622, 626-27 (Tex. App.--Austin 1983, writ ref'd n.r.e.) (citing Morgan v.
United States, 304 U.S. 1, 18-19 (1938)).

 Throughout the administrative process the issue was whether obtaining the
examination at the Academy competition and distributing it to students to study for the Hutto
competition constituted good cause for Hoskins's termination. (4) Hoskins was initially notified by
the superintendent of the District that the Board approved the superintendent's proposal for
termination because Hoskins's conduct constituted good cause for dismissal:


[O]n or about November 18 and 19, 1996, you allegedly wrongfully obtained a
copy of a test which was used in an FFA District Contest. You then allegedly
answered the questions, photocopied the test and provided it to students who would
take the test, and advised them that it might be the same test that they were about
to take. You admitted to telling the students "don't make a 100 and get every
question right' and "not to tell it was the same test that they had studied." Such
alleged conduct represents an encouragement to students to engage in dishonesty
and unfair competition. The conduct represents a failure to meet the accepted
standards of conduct for the profession as generally recognized and applied in
similarly situated school district [sic] in this state and constitutes grounds for
dismissal from employment. 



The hearing examiner made findings related to these allegations and determined that while it was
undisputed that Hoskins obtained a copy of the exam and provided its answers to the students, the
critical issue was whether Hoskins knew or had a strong expectation that the test he furnished to
the students was the same test that would be given at the Hutto competition. The examiner then
found, from the evidence presented, that Hoskins in fact either knew or had a strong expectation
that the test was to be used in the later competition and that good cause existed for Hoskins's
termination. The Board accepted these findings. The Commissioner, affirming the Board's
decision to terminate Hoskins's contract, found that substantial evidence existed to support the
Board's decision to terminate Hoskins's contract based on evidence that Hoskins provided a test
to students that he knew would be administered at the Hutto competition. We do not find the
minor verbiage variations among the superintendent's letter, the examiner's findings, and the
Commissioner's decision deprived Hoskins of the ability to knowingly defend the allegations
against him. 

 Hoskins was notified at each stage of the administrative process of the pertinent
legal and factual issues that would control the proceedings in his case. Moreover, the
Commissioner based his decision on the hearing examiner's fact findings, the same findings relied
upon by the Board. 

 We therefore overrule the fourth and fifth issues.


Absence of Findings of Fact in Commissioner's Decision

 In issue six, Hoskins argues that the Commissioner committed error by failing to
include findings of fact in his decision. The Commissioner must include findings of fact in his
decision or "adopt by reference and incorporate findings of fact . . . from the local record." 
Education Code § 21.304(a). 

 The Commissioner's decision in this case did not include separate findings of fact.
Although the better practice would be to include a specific section in the decision for findings, we
hold that the Commissioner satisfactorily adopted by reference and incorporated the fact findings
from the local record. Throughout the discussion portion of his decision, the Commissioner
makes reference to the previous findings and closes by stating:


Given that the board did not modify or reject fact findings, that the fact findings
support the board's action to terminate and that good cause existed to support the
decision, the action of the board is upheld. 



The Commissioner uses the fact findings from the local record to demonstrate that substantial
evidence exists to support the findings of the hearing examiner as adopted by the Board.

 Hoskins urges that the Commissioner erroneously found that Hoskins "knew" the
Academy test would be used at the Hutto competition when in fact the hearing examiner found
that Hoskins "knew or had a strong expectation" that the same test would be used. He argues that
the examiner's findings do not support this "heightened [mental] state," and that this Court should
render judgment enforcing the examiner's proposal that Hoskins be suspended. Again we note
that the Board was free to disregard the examiner's proposal for granting relief. See Education
Code § 21.259(b)(2). Additionally, we have no trouble in discerning the Commissioner's findings
when reviewing his decision. If, however, the Commissioner's failure to discretely state his own
findings or to use more specific language in adopting the findings from the local record can be
characterized as error, we cannot say that the error "was likely to have led to an erroneous
decision by the commissioner." See id. § 21.307(g). The hearing examiner, the Board, the
Commissioner, and the district court all found that good cause existed to terminate Hoskins's
contract. 

 We overrule issue six.


Good Cause for Termination

 By his seventh issue, Hoskins argues that the District failed to prove good cause
for discharge because it did not produce proof of "the accepted standards of conduct for the
profession as generally recognized and applied in similarly situated school districts in this state." 
Education Code § 21.156(a) (defining good cause). We review the Commissioner's finding of
good cause pursuant to the substantial-evidence rule. See id. § 21.307(e). "The correct
substantial evidence rule test is whether the evidence as a whole is such that reasonable minds
could have reached the conclusion that the agency reached in order to justify its action." 
Suburban Util. Corp. v. Public Util. Comm'n, 652 S.W.2d 358, 364 (Tex. 1983); see also State
v. Public Util. Comm'n, 883 S.W.2d 190, 204 (Tex. 1994) (true test not whether agency reached
correct conclusion, but whether some reasonable basis exists in record for action taken by
agency). Thus, we must determine whether the Commissioner's findings are supported by
substantial, probative, reliable evidence found in the whole record and may not substitute our
judgment for that of the Commissioner. See Clear Creek ISD v. Commissioner of Educ., 775
S.W.2d 490, 493 (Tex. App.--Austin 1989, no writ).

 Dr. Thomas Anderson, who was formerly employed as the superintendent of the
San Marcos Independent School District, a former executive deputy commissioner of the Texas
Education Agency, and past interim commissioner of education, testified that, based on his diverse
background in school administration, he was aware of "the standards of conduct for the profession
. . . in similarly situated school districts . . . around the state." It was his opinion that, apart from
those cases involving egregious conduct such as sexual abuse, compliance with this standard is
fact driven. In response to several hypothetical questions, Dr. Anderson agreed that Hoskins's
conduct would warrant termination under this standard. In addition to Dr. Anderson's testimony,
the superintendent of the District, acknowledging that he was familiar with standards in other
school districts, testified that he believed that Hoskins's conduct did not meet those accepted
standards of conduct. 

 In light of this evidence, a reasonable trier of fact could have determined that
Hoskins's conduct did not fall within the accepted standards of conduct for teachers as generally
recognized and applied in school districts similarly situated to the District. We hold that there is
substantial evidence to support a finding of good cause to terminate Hoskins. We overrule issue
seven.


Differing Treatment of Other Teachers Involved

 Hoskins broadly asserts in issue eight that the District's failure to discipline the
other teachers who reviewed and marked the Academy test violates his "constitutional rights
against arbitrary governmental action against similarly situated persons and discrimination under
state and federal due course of law and due process constitutional provisions (5) and the federal and
state equal protection constitutional provisions (6) . . . ." Hoskins's argument is apparently premised
on a contention that he and the three teachers who were not disciplined were within the same class
of persons yet treated differently. As federal precedent is persuasive when construing the scope
of individual rights under the Texas Constitution, we often apply the same rules of construction
to claims under either constitution. See In re R.L.H., 771 S.W.2d 697, 700 (Tex. App.--Austin
1989, writ denied). Hoskins's allegations generally give rise only to an equal-protection and
equal-rights argument. See id. at 700 (quoting Bearden v. Georgia, 461 U.S. 660, 665 (1983))
("we approach the question whether the State has invidiously denied one class of defendants a
substantial benefit available to another class of defendants under the Equal Protection Clause."). 
We will address Hopkins's due-process and due-course-of-law claims though they are arguably
irrelevant. (7) See id. We have previously reviewed the process afforded Hopkins. (8) We hold that
the District and Commissioner acted in compliance with the Education Code and that Hoskins was
afforded all the process which he was due. We overrule Hoskins's due-process and
due-course-of-law-claims.

 We now address Hoskins's claims under an equal-protection analysis. The Equal
Protection Clause of both the United States and Texas constitutions requires that those who are
similarly situated be treated equally. See Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439
(1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)) (Equal Protection Clause directs "that
all persons similarly situated should be treated alike"); Whitworth v. Bynum, 699 S.W.2d 194,
197 (Tex. 1985) (under the Texas Equal Protection Clause similarly situated individuals must be
treated equally). We agree with the District that the facts in this case reveal that the other three
teachers were not involved in the incident to the same degree as Hoskins and thus were not
similarly situated. 

 The District was required to find good cause to terminate Hoskins, which requires
a factual inquiry into whether Hoskins failed to meet the accepted standards of conduct for the
profession as generally recognized and applied in similarly situated school districts in the State. 
See Education Code § 21.156(a). Hoskins, unlike the other teachers involved, obtained the test
having a strong suspicion that it would be administered the next day to SHS students, recruited
others to assist him in supplying the answers to the test, distributed the answered exam to the
students, and told the students not to make a perfect score and not to tell anyone about the test. 
Hoskins later tried to cover up the fact that the students had the test. The other teachers helped
Hoskins answer the questions to the exam believing that the test would be used as a study guide,
as is customary for FFA competitions. When they learned that the test that they had supplied
answers to was the one used in the Hutto competition, they promptly reported the incident to their
principal. The evidence clearly reveals that Hoskins's conduct differs significantly from that of
the others. Determining whether good cause exists for termination involves a factual inquiry. 
Because Hoskins was not similarly situated to the other three teachers involved, the federal and
state equal-protection clauses do not mandate equal treatment. See, e.g., Mayhew, 964 S.W.2d
at 939 (landowner seeking zoning change for 1200 acre parcel of land not similarly situated to
landowner seeking to build on small parcel); Texas Workers' Compensation Comm'n v. Garcia,
862 S.W.2d 61, 103 (Tex. App.--San Antonio 1993), rev'd on other grounds, 893 S.W.2d 504
(Tex. 1995) (no equal-protection violation when benefits calculated differently for seasonal and
non-seasonal workers because not similarly situated). 

 We therefore overrule issue eight.


Remediation as the Appropriate Sanction

 Hoskins finally contends that he should have been afforded remediation. To
support this argument, Hoskins cites a published article suggesting that teachers should be given
the opportunity for remediation prior to contract termination or nonrenewal. See Eric W.
Schulze, When Must a Teacher be Afforded an Opportunity for Remediation Prior to Termination
or Nonrenewal, Tex. Sch. Adm'rs Legal Digest, April 1991. The article posits that school
districts should encourage "remediation" as an alternative to termination or nonrenewal when
teachers have engaged in "remediable" conduct, by advising these teachers of their deficiencies
and allowing them a reasonable opportunity to correct their problems. See id. at 1-5. The article,
however, correctly recognizes that there is no statute governing this alternative solution in Texas. 
See id. at 1. This Court is governed by the Education Code and thus is limited to reviewing the
Commissioner's decision under the substantial-evidence rule. See Education Code § 21.307(e). 
We have held that there is substantial evidence supporting the finding of good cause to terminate
Hoskins's contract. Regardless of the availability or desirability of other remedies, this ends our
inquiry.

 We overrule Hoskins's ninth issue. 


Jurisdiction

 In a separate cause, the District appeals the district court's denial of its plea to the
jurisdiction, which would allow Hoskins a trial on his independent claim of breach of
contract/wrongful discharge. The District asserts (1) res judicata and/or collateral estoppel and
(2) Hoskins's failure to exhaust his administrative remedies. (9) 


Res Judicata/Collateral Estoppel

 The District contends in its first issue that Hoskins is barred from bringing a breach
of contract/wrongful discharge claim because "the administrative process . . . already . . . decided
contested fact issues arising from the termination of Hoskins' [sic] teacher contract." By this
contention, the District is essentially raising res judicata or collateral estoppel as grounds for
dismissal for lack of jurisdiction. See Coalition of Cities for Affordable Util. Rates v. Public Util.
Comm'n, 798 S.W.2d 560, 562-63 (Tex. 1990) (res judicata bars retrial of claims pertaining to
matter previously determined, while collateral estoppel precludes relitigation of identical issues
of fact already litigated).

 Res judicata and collateral estoppel, however, are properly asserted as "pleas in
bar," not pleas to the jurisdiction. See Texas Highway Dep't v. Jarrell, 418 S.W.2d 486, 488
(Tex. 1967); State v. Narvaez, 900 S.W.2d 846, 847 (Tex. App.--Corpus Christi 1995, no writ). 
"A plea to the jurisdiction contests the [trial] court's authority to determine the subject matter of
the cause of action." Dolenz v. Texas State Bd. of Med. Exam'rs, 899 S.W.2d 809, 811 (Tex.
App.--Austin 1995, no writ); see also Speer v. Stover, 685 S.W.2d 22, 23 (Tex. 1985); Texas
Parks & Wildlife Dep't v. Garrett Place, Inc., 972 S.W.2d 140, 142 (Tex. App.--Dallas 1998, no
pet.). Res judicata and collateral estoppel, on the other hand, are affirmative defenses to be raised
at trial. Williams v. National Mortgage Co., 903 S.W.2d 398, 401 (Tex. App.--Dallas 1995, writ
denied); Metromedia Long Distance, Inc. v. Hughes, 810 S.W.2d 494, 499 (Tex. App.--San
Antonio 1991, writ denied); see also Tex. R. Civ. P. 94 (listing res judicata as an affirmative
defense). Because neither res judicata nor collateral estoppel can be asserted as a jurisdictional
obstacle to the district court's authority to hear the case, the district court properly denied the
District's plea to the jurisdiction.

 The District's res judicata and collateral estoppel pleas must fail on yet another
basis. Both doctrines apply to relitigation of issues. See Coalition of Cities, 798 S.W.2d at 562-63. No relitigation is presented here. The litigation before the district court and now before this
Court is one continuing case that began with the District's superintendent's recommendation that
Hoskins's contract be terminated. It progressed to the Board, the Commissioner, the district
court, and finally to this Court. When the district court severed Hoskins's administrative action
from his independent claims, the independent claims remained in the district court and only his
appeal from the Commissioner's decision continued forward and is properly before us. On this
record, res judicata and collateral estoppel are inapplicable.


Exhaustion of Administrative Remedies

 By its final two issues the District asserts that the district court lacked jurisdiction
because Hoskins failed to exhaust his administrative remedies. (10) Generally, a person must exhaust
all administrative remedies before seeking judicial review of an agency's action. See Education
Code §§ 7.057, 21.307; Wilmer-Hutchins ISD v. Brown, 912 S.W.2d 848, 854 (Tex. App.--Austin
1995, writ denied). A party aggrieved by an action of a local school board may appeal to the
Commissioner, who, upon due notice, shall hold a hearing and issue a decision. See id. §§
7.057(a)-(c). The decision of the Commissioner may then be appealed to the district court. See
id. § 7.057(d).

 Hoskins clearly followed all available avenues to review his administrative
complaints. Upon notice of the Board's proposal to terminate his teaching contract, Hoskins
requested a hearing before a hearing examiner. See id. § 21.253. Following the hearing, the
Board terminated Hoskins's contract. See id. § 21.259. Hoskins appealed the Board's decision
to the Commissioner, who found that substantial evidence existed to support the Board's findings. 
See Education Code §§ 21.301-.304. Hoskins then filed suit in district court seeking judicial
review. See id. § 21.307. We conclude that Hoskins exhausted his administrative remedies, and
the district court properly denied the District's plea to the jurisdiction.

 We overrule the District's issues two and three. (11)


CONCLUSION

 Having disposed of both Hoskins's and the District's issues, we affirm the district
court's order and final judgment in both causes.



 


 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed in Both Causes

Filed: September 16, 1999

Do Not Publish
1. A teacher "employed under a continuing contract is entitled to continue in the teacher's
position or a position with the school district for future school years without the necessity for
annual nomination or reappointment" until the teacher leaves the school district for certain
enumerated reasons, including discharge for good cause. See Tex. Educ. Code Ann. § 21.154
(West 1996).
2. The superintendent recommended that Hoskins be terminated because he encouraged the
students to engage in dishonesty and unfair competition by wrongfully obtaining a copy of the test
that was used in the FFA competition, answering the questions, providing the answered test to the
students, advising them not to make a 100 percent score, and telling them not to tell anyone that
they had the test.
3. See Education Code § 21.257 (hearing examiner's recommendation may include proposal
for granting relief).
4. Good cause is "the failure to meet the accepted standards of conduct for the profession as
generally recognized and applied in similarly situated school districts in this state." Education
Code § 21.156(a).
5. See U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19.
6. See U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 3.
7. The right to due process or due course of law is at stake when an individual is treated in a
unique and arbitrary way by the government. See R.L.H., 771 S.W.2d at 700 n.2; see also
Slochower v. Board of Educ., 350 U.S. 351, 359 (1956) (protection of individual against arbitrary
action very essence of due process); Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 938 (Tex.
1998) (government act will only violate substantive due process if clearly arbitrary and
unreasonable). Hoskins has not asserted that the termination proceedings to which he was
subjected were arbitrary in any way. See R.L.H., 771 S.W.2d at 700 n.2.
8. See pp. 5-7, supra.
9. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 1999) (person may
appeal interlocutory district-court order that grants or denies plea to jurisdiction).
10. "A plea to the jurisdiction can be the proper vehicle to challenge the premature appeal of
an administrative ruling." Washington v. Fort Bend ISD, 892 S.W.2d 156, 158 (Tex.
App.--Houston [14th Dist.] 1994, writ denied); see also County of Bexar v. Garcia, 974 S.W.2d
107, 108-09 (Tex. App.--San Antonio 1998, no pet.) (statute requiring person to present claim to
county commissioners court before filing suit against county is a jurisdictional requirement). 
Thus, we can address the merits of this contention.
11. Because we find that Hoskins did exhaust his administrative remedies in this case, we need
not address the District's issue concerning whether exhaustion was necessary.



the Commissioner, who found that substantial evidence existed to support the Board's findings. 
See Education Code §§ 21.301-.304. Hoskins then filed suit in district court seeking judicial
review. See id. § 21.307. We conclude that Hoskins exhausted his administrative remedies, and
the district court properly denied the District's plea to the jurisdiction.

 We overrule the District's issues two and three. (11)


CONCLUSION

 Having disposed of both Hoskins's and the District's issues, we affirm the district
court's order and final judgment in both causes.



 


 Lee Yeakel, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed in Both Causes

Filed: September 16, 1999

Do Not Publish
1. A teacher "employed under a continuing contract is entitled to continue in the teacher's
position or a position with the school district for future school years without the necessity for
annual nomination or reappointment" until the teacher leaves the school district for certain
enumerated reasons, including discharge for good cause. See Tex. Educ. Code Ann. § 21.154
(West 1996).
2. The superintendent recommended that Hoskins be terminated because he encouraged the
students to engage in dishonesty and unfair competition by wrongfully obtaining a copy of the test
that was used in the FFA competition, answering the questions, providi