**Opinion issued April 9, 2026**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-24-00555-CV

_____

**ALECIA GASTON, Appellant**

**V.**

**CFOUR APPRAISALS, INC, CARDINAL FINANCIAL COMPANY, LP, RASHID GHAFOOR, AND FINDOM, INC., Appellees**

On Appeal from the 412th Judicial District Court
Brazoria County, Texas
Trial Court Case No. 118544-CV

## MEMORANDUM OPINION

Appellant Alecia Gaston purchased a home and soon encountered problems with the plumbing and septic system. An appraisal report completed as part of the mortgage underwriting process incorrectly reflected that the property was subject to

public water and sewer. Gaston sued her lender, Cardinal Financial Company, and the appraisal company, CFour Appraisals, and asserted claims for negligence, negligent misrepresentation, and violations of the DTPA. Cardinal asserted a cross claim against CFour and third-party claims against the seller, Findom, Inc., and Findom's principal, Rashid Ghafoor. The trial court granted summary judgment in favor of Cardinal and CFour, and Cardinal nonsuited its cross claim and third-party claims. After the nonsuit but before the trial court signed the order granting the nonsuit, Gaston supplemented her petition to assert claims against Findom and Ghafoor.

On appeal, Gaston argues that the trial court erroneously granted summary judgment in favor of Cardinal and CFour because her summary judgment evidence raised genuine issues of material fact. She also argues that the trial court erroneously granted Cardinal's nonsuit because Gaston asserted claims against Findom and Ghaffor, and those claims survived the nonsuit. We affirm.

## Background

In 2020, Alecia Gaston wanted to purchase a home for herself and her two children. She found a home that she liked in Clute, and she signed a sales contract with the seller, Findom, Inc. Rashid Ghafoor, Findom's principal, disclosed that the property had a "Septic/On-Site Sewer Facility," the property did not have a "Public Sewer System," and a well provided the water supply. Ghafoor stated that he was

2

not aware of any defects in these items, or that they needed repair. He further stated that he was not aware of any defects or malfunctions in the plumbing systems. Gaston acknowledged receiving the disclosures. Ghafoor also completed an "Information About On-Site Sewer Facility" form stating that the property had a septic tank and that Ghafoor was not aware of any maintenance contract for the septic tank.

Due to credit concerns, Gaston did not try to finance the purchase through a conventional loan. Instead, she sought and obtained financing through a loan from the Federal Housing Administration, a division of the U.S. Department of Housing and Urban Development. Cardinal served as the lender for Gaston's FHA loan and agreed to loan Gaston approximately $208,000. The loan application that Gaston completed informed her that "[a]ny appraisal or value of the property obtained by the Lender is for use by the Lender and Other Loan Participants" and that "[t]he Lender and Other Loan Participants have not made any representation or warranty, express or implied, to me about the property, its condition, or its value." The FHA also warned Gaston about the need to obtain a home inspection.

Gaston obtained a home inspection from a third-party inspector in December 2020. The inspector discovered numerous problems with the home. Relevant to this appeal, the inspector noted that the water supply for the property came from a well. A safety hazard existed because the "[p]ump motor [was] not grounded for the water

3

well," and the inspector recommended that Gaston contact a qualified professional for the repair. The inspector also noted that a safety hazard existed with the "Sewer/Drainage system" because there was a "[c]racking or crumbling drainage [culvert] on the property." The inspector recommended that Gaston contact a qualified structural engineer because "[f]ailure in this system could be catastrophic." When speaking with Gaston, the inspector recommended that she ask Ghafoor where the septic tank was located.

Gaston negotiated with Findom to complete some repairs on the property. Findom's contractor located the septic tank and showed Gaston that the cap for the septic tank was located in a front flower bed. Following the repairs, Gaston's inspector then inspected the property a second time in February 2021. This report continued to identify deficiencies at the property, including a "drain, waste and/or vent pipe [that] showed signs of a leak."

As part of the sale process, Cardinal hired a company called Class Valuation to appraise the property. Class Valuation, in turn, hired CFour Appraisals. Kimberly Freese appraised the property in April 2021 and submitted a report to Cardinal. Important here, Freese checked a box marked "Public" for both water and sanitary sewer. It is undisputed that this is incorrect.

The appraisal report also included comments concerning its intended use and user:

4

The intended user of the appraisal report is the lender/client only. The intended use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated scope of work, purpose of the appraisal, reporting requirements of this appraisal report form, and definition of market value. No additional intended use or users are identified by the appraiser.

The appraiser has not identified any purchaser, borrower or seller as an intended user of this appraisal and no such party should use or rely on this appraisal for any purpose. Such parties are advised to obtain an appraisal from an appraiser of their own choosing if they require an appraisal for their own use. This appraisal report should not serve as the basis for any property purchase decision or any appraisal contingency in a purchase agreement relating to the property.

Gaston's realtor gave her a copy of the appraisal report shortly after CFour submitted it to Cardinal, but Gaston did not read the full report at that time. The only portion of the report that she read was the portion stating that the property "met value of the loan."

Gaston closed on the property in May 2021. In August 2021, Gaston allegedly began experiencing plumbing problems, including sewage backing up into her shower. She hired numerous contractors and discovered that "the private septic tank was not working properly and needed to be completely replaced" and that the "private well also had to be moved." In October 2021, Gaston discovered the error on the appraisal report listing the water and sewer as "public." She contacted both CFour and Cardinal, but neither company was responsive to her inquiries. She fell behind on her mortgage payments, and Cardinal accelerated the balance of loan and notified her of an impending foreclosure sale.

Gaston sued CFour and Cardinal. She alleged that in the appraisal report, CFour "negligently represented the Property being subject to public water and sanitary sewer, which permitted approval of Ms. Gaston's FHA loan." She alleged that the FHA requires that property meet certain conditions for a prospective buyer to qualify for a loan, including a requirement that "any septic tank must be fifty feet from any private well and one hundred feet from the leech lines." Gaston's property allegedly did not meet these requirements. She alleged that had Freese accurately documented that the property had a private septic tank and well, "the Property would have been ineligible for the FHA loan and Ms. Gaston would not have purchased the Property." Gaston asserted claims for negligence, negligent misrepresentation, and violations of the DTPA. Gaston also sought and obtained a temporary restraining order to halt the pending foreclosure sale.

As discovery progressed, Cardinal asserted its own claims. First, it obtained leave to assert third-party claims against Findom and Ghafoor and designate them as responsible third parties. Cardinal alleged that Findom and Ghafoor were negligent or misrepresented on the seller disclosure form that they were not aware of any defects or malfunctions in the plumbing system, and they also allegedly failed to provide information about the septic tank on the "Information About On-Site Sewer Facility" form. Cardinal asserted a contribution claim against Findom and Ghafoor.

6

Cardinal also asserted a cross claim against CFour and a third-party claim against Freese based on Freese's indication in the appraisal report that the property was subject to public water and sewer. Cardinal asserted claims for negligence, negligent misrepresentation, and breach of contract. The appellate record does not indicate that Freese was ever served with process. She did not file an answer or otherwise make an appearance in this case.

After discovery progressed further, Cardinal moved for traditional and no-evidence summary judgment on each of Gaston's claims against it. Concerning Gaston's negligence claim, Cardinal argued that it was Gaston's mortgagor, it had no special relationship with her, and it owed no duty to her. It further argued that as a matter of law it did not proximately cause Gaston's damages because Gaston agreed to purchase the house "as is," she signed documents stating that the appraisal was for Cardinal's use only and Cardinal made no representations to her about the property's condition or value, and she had the property inspected by a third party prior to closing and was aware of the private well and septic tank.

With respect to Gaston's negligent misrepresentation claim, Cardinal argued that it made no representations to Gaston, nor did it make a representation to her to guide her in her business, a requirement for the "commercial tort" of negligent misrepresentation. It further argued that as a matter of law Gaston did not justifiably rely on Freese's appraisal report when she purchased the property: Gaston signed

several documents—including the loan application—stating that the appraisal was for Cardinal's use and neither Cardinal nor the FHA warranted the property's value or condition, and Gaston spoke with her third-party inspector and Findom's contractor about the well and septic tank. Cardinal made similar arguments regarding Gaston's DTPA claim: the appraisal report was not a representation by Cardinal; Gaston did not read the entire appraisal report before purchasing the property; the appraisal report was not intended for her; Gaston did not justifiably rely on a misrepresentation by Cardinal; and there was no evidence that Cardinal knew the statements in the appraisal report about the well and septic tank were inaccurate.

Cardinal set its motion for hearing on April 18, 2024. On April 8, Gaston—acting pro se even though she was represented by counsel of record—filed but did not serve a response arguing that summary judgment was inappropriate. This response referenced her own exhibits but stated that the exhibits would follow. Three days before the summary judgment hearing, Gaston's counsel filed a motion for leave to file a supplemental response. Counsel attached the supplemental response, which provided little in the way of additional argument but did attach the exhibits referenced in Gaston's pro se response. These exhibits included internal FHA and HUD guidelines and protocols for appraisals of property.

Several days after the summary judgment hearing, the trial court granted summary judgment in favor of Cardinal and dismissed Gaston's claims against

Cardinal with prejudice. The order stated: "On this day came to be heard Defendant Cardinal Financial Company, LP's Amended Motion for Summary Judgment on file herein ("Motion") and upon due consideration of same, the Court finds that said Motion for Summary Judgment should be GRANTED." Cardinal moved to sever Gaston's claims against it, but the trial court did not immediately rule on this motion.

CFour also moved for traditional and no-evidence summary judgment on Gaston's three claims against it. This motion largely raised the same arguments in favor of summary judgment that Cardinal had asserted. CFour also relied on nearly all the same evidence Cardinal had relied upon, although CFour attached the complete transcripts of Gaston's two depositions rather than relying on excerpts.

The trial court granted summary judgment in favor of CFour on June 19, 2024. That same day, the court granted Cardinal's motion to sever and severed Gaston's claims against Cardinal into a separate cause number.

Cardinal then nonsuited its cross claim against CFour and its third-party claims against Findom and Ghafoor on June 27, 2024. Several hours later, Gaston filed a supplemental petition against Findom and Ghafoor. Gaston asserted claims for negligent misrepresentation, negligence per se, negligence, and DTPA violations against Findom and Ghafoor.

On June 28, the trial court signed an order of nonsuit and dismissed Cardinal's claims against CFour, Findom, and Ghafoor.

Gaston filed a notice of appeal in the original cause number only. In her notice of appeal, she stated her desire to appeal "the Severance Order signed on June 19, 2024, the Summary Judgment Order signed on June 19, 2024, the Order of Nonsuit signed on June 28, 2024, as well as any other rulings subsumed therein."

## Effect of Cardinal's Nonsuit

In her second issue, Gaston argues that the trial court's order granting Cardinal's nonsuit as to Findom and Ghafoor did not dispose of her own claims against them, and the court erred by signing the nonsuit order after she filed her supplemental petition asserting claims against Findom and Ghafoor. Gaston provides no authorities or analysis relating to this issue. However, because the issue raises the question of whether a final judgment exists—a question that affects our appellate jurisdiction—we address this issue first.

We have appellate jurisdiction over appeals from final judgments and certain interlocutory orders authorized by statute. *Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020). A judgment or order that does not follow a conventional trial on the merits lacks the presumption of finality. *In re Lakeside Resort JV, LLC*, 689 S.W.3d 916, 922 (Tex. 2024) (orig. proceeding) (per curiam). Such an order may become a final judgment if it (1) disposes of all remaining parties and claims then before the court, regardless of its language; or (2) includes unequivocal finality language that expressly disposes of all claims and

parties. *In re Urb. 8 LLC*, 689 S.W.3d 926, 929 (Tex. 2024) (orig. proceeding) (per curiam) (quotation omitted).

Rule of Civil Procedure 162 governs nonsuits and provides that at any time before the plaintiff has introduced all her evidence other than rebuttal evidence, the plaintiff "may dismiss a case, or take a non-suit, which shall be entered in the minutes." TEX. R. CIV. P. 162. A nonsuit is effective when filed: it "extinguishes a case or controversy from the moment the motion is filed or an oral motion is made in open court; the only requirement is the mere filing of the motion with the clerk of the court." *Univ. of Tex. Med. Branch at Galveston v. Est. of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam) (quotation omitted); *see Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (stating that nonsuit "renders the merits of the nonsuited case moot"). No court order is required. *Epps v. Fowler*, 351 S.W.3d 862, 868 (Tex. 2011).

A trial court generally has no discretion to refuse to dismiss a suit following a nonsuit. *Est. of Blackmon*, 195 S.W.3d at 100. In other words, the court has a ministerial duty to dismiss the suit. *Id.*; *In re Fort Bend Indep. Sch. Dist.*, 589 S.W.3d 301, 311 (Tex. App.—Houston [1st Dist.] 2019, orig. proceeding) ("When a plaintiff is entitled to a nonsuit, the trial court's dismissal order is ministerial.").

Although the plaintiff has an "absolute right to nonsuit a claim before resting its case-in-chief," the nonsuit "shall not prejudice the right of an adverse party to be

heard on a pending claim for affirmative relief," nor does it affect a pending motion for sanctions, attorney's fees, or other costs. *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 468–69 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (op. on reh'g) (en banc) (quotation omitted); TEX. R. CIV. P. 162; *see also Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 38 (Tex. 2008) ("Rule 162 is not limited to affirmative claims *against the nonsuiter*; it prohibits dismissal if the effect would be to prejudice any pending claim for affirmative relief, period."); *Greenberg v. Brookshire*, 640 S.W.2d 870, 872 (Tex. 1982) (orig. proceeding) (per curiam) ("A plaintiff's right [to a nonsuit] exists from the moment a written motion is filed or an oral motion is made in open court unless the defendant has, prior to that time, filed pleadings seeking affirmative relief.").

"[A] trial court's jurisdiction over a cause ends when a notice of nonsuit is given for the only pending claim for affirmative relief." *Williams v. Nat'l Mortg. Co.*, 903 S.W.2d 398, 402 (Tex. App.—Dallas 1995, writ denied). Where only one party has a pending claim for affirmative relief, the filing of a nonsuit effectively "divests a trial court of its subject matter jurisdiction." *Id.*; *see Morath v. Lewis*, 601 S.W.3d 785, 788 (Tex. 2020) (per curiam) ("Because the plaintiff's non-suit moots his case by extinguishing a case or controversy, the non-suit is not merely the end of the case. It is the end of the Court's power to decide the case, assuming there are no claims for relief against the non-suiting party.") (quotations and brackets omitted).

12

Thus, "a claim for affirmative relief filed *after* a notice of nonsuit is usually ineffective to prevent termination of the lawsuit." *Williams*, 903 S.W.2d at 403; *see In re Greater Houston Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (orig. proceeding) (per curiam) (concluding that when plaintiff filed valid notice of nonsuit before defendants filed counterclaims, trial court abused its discretion by refusing to dismiss case and instead setting case for trial).

Furthermore, "it is too late to amend the pleadings after judgment has been rendered." *Rodriguez v. Crutchfield*, 301 S.W.3d 772, 775 (Tex. App.—Dallas 2009, no pet.); *Cantu v. Martin*, 934 S.W.2d 859, 860 (Tex. App.—Corpus Christi–Edinburg 1996, no writ) ("[A]fter judgment is rendered, it is too late to amend, whether by a trial amendment or an amendment complete in itself."). After a final judgment, there is no "live pleading" for an amended or supplemental petition to amend or supplement. *Leach v. Brown*, 292 S.W.2d 329, 331 (Tex. 1956) (quotation omitted); *Williams*, 903 S.W.2d at 403 ("The Williamses' various claims were no longer before the trial court because the trial court had dismissed them. Because of this, there was no lawsuit to which National's counterclaim could attach."). If, however, the amended or supplemental petition "contain[s] all the essentials of a separate claim," it can be maintained as a separate and independent lawsuit. *Williams*, 903 S.W.2d at 403; *Loomis Land & Cattle Co. v. Wood*, 699 S.W.2d 594, 595 (Tex. App.—Texarkana 1985, writ ref'd n.r.e.) (concluding that cross-action

13

filed after plaintiff nonsuited original claims "contained all the essentials of a separate claim and could be maintained as an independent suit," and "fact that it was filed and docketed as part of a suit no longer in existence did not defeat its efficacy as an independent suit").

Gaston filed suit against CFour and Cardinal in June 2022. Cardinal asserted third-party claims against Ghafoor and Findom in May 2023, and it asserted a cross claim against CFour in October 2023.[1] CFour, Ghafoor, and Findom did not assert any claims for affirmative relief, and Gaston did not immediately assert claims against Ghafoor and Findom.

The trial court granted summary judgment on Gaston's claims against Cardinal on April 23, 2024. Two months later, on June 19, 2024, the court granted summary judgment on Gaston's claims against CFour. These two orders disposed of all Gaston's pending claims. The only claims remaining after the summary judgment

---

[1]     Cardinal also asserted a third-party claim against Kimberly Freese, but the appellate record does not reflect that Cardinal ever served her with process or that she appeared in this lawsuit. A judgment is final for purposes of appeal when (1) a judgment expressly disposes of some, but not all defendants; (2) the only remaining defendants have not been served or answered; and (3) nothing in the record indicates that the plaintiff ever expected to obtain service on the unserved defendants, "such that the case 'stands as if there had been a discontinuance' as to the unserved defendants." *In re Sheppard*, 193 S.W.3d 181, 187 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding [mand. denied]) (quoting *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230, 232 (Tex. 1962)). Cardinal's third-party claim against Freese thus does not affect the finality of the judgment.

14

orders were Cardinal's cross claim against CFour and its third-party claims against Ghafoor and Findom.

At 2:28 p.m. on June 27, 2024, Cardinal filed a notice of nonsuit of its claims against CFour, Ghafoor, and Findom. Upon this filing, all pending claims were disposed, whether by summary judgment (Gaston's claims against Cardinal and CFour) or by nonsuit (Cardinal's claims against CFour, Ghafoor, and Findom). Less than four hours later, at 6:01 p.m., when no pending claims remained, Gaston filed a supplemental petition asserting claims against Ghafoor and Findom for the first time. At 1:25 p.m. the following day, June 28, the trial court signed the order granting Cardinal's notice of nonsuit and dismissing Cardinal's claims against CFour, Ghafoor, and Findom.

Cardinal's notice of nonsuit was effective immediately upon filing. *See Est. of Blackmon*, 195 S.W.3d at 100. At the time of filing, no party other than Cardinal had affirmative claims pending, so Cardinal's nonsuit did not prejudice the rights of any adverse party. *See* TEX. R. CIV. P. 162; *Gaskamp*, 596 S.W.3d at 468. Cardinal's nonsuit therefore ended the case and made the interlocutory summary judgment orders final. *See Travelers Ins. Co.*, 315 S.W.3d at 862 (stating that nonsuit "renders the merits of the nonsuited case moot"); *see also Zimmerman v. Ottis*, 941 S.W.2d 259, 263 (Tex. App.—Corpus Christi–Edinburg 1996, orig. proceeding) ("When the plaintiff nonsuits his entire case, leaving no remaining claims for affirmative relief

in the lawsuit, there is no longer any real controversy between the parties, and the trial court has no jurisdiction to grant affirmative relief or continue the lawsuit in such a way as to suggest that any justiciable claims remain for determination. The lawsuit remains on the docket merely as an empty shell awaiting the final ministerial act of dismissal.").

We conclude that because Gaston did not file her supplemental petition raising claims against Ghafoor and Findom until after Cardinal had nonsuited the only pending claims in the lawsuit, the trial court did not err by signing the order granting the nonsuit, even though it did so after Gaston supplemented her petition. *See In re Greater Houston Orthopaedic Specialists*, 295 S.W.3d at 325. At the time Gaston supplemented her petition, the case had ended and there were no live claims to which her supplemental petition could attach. *See Leach*, 292 S.W.2d at 331; *Williams*, 903 S.W.2d at 403. We conclude that Gaston's supplemental petition does not affect our appellate jurisdiction over this appeal involving her claims against Cardinal and CFour.

We overrule Gaston's second issue.

## Negligent Misrepresentation

In her first issue, Gaston argues that the trial court erred by granting summary judgment in favor of Cardinal and CFour because she presented evidence raising a fact issue that Cardinal and CFour owed her a duty of care, but they breached this

16

duty when Freese incorrectly reported that the house was subject to public water and sewer system. Although Gaston states that evidence supported each of her causes of action, the arguments and authorities in her brief relate only to whether CFour made false statements in the appraisal report knowing that both Cardinal and Gaston would rely on the statements. When construed fairly, these arguments implicate Gaston's negligent misrepresentation claim, but not her negligence or DTPA claims. We therefore only address whether Gaston raised a fact issue on her negligent misrepresentation claim.

## A.  Summary Judgment Standard of Review

We review a trial court's summary judgment ruling de novo. *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023). A party moving for traditional summary judgment must prove that no genuine issues of material fact exist and it is entitled to judgment as a matter of law. *Id.*; TEX. R. CIV. P. 166a(c).[2] If the movant files a proper no-evidence summary judgment motion, the burden shifts to the nonmovant to present evidence raising a fact issue on each element challenged in the motion. *Wal-Mart Stores*, 663 S.W.3d at 576; TEX. R. CIV.

---

[2]  The Texas Supreme Court recently amended Rule of Civil Procedure 166a, but the amendments "apply only to a motion for summary judgment filed on or after March 1, 2026." Order, Misc. Docket No. 26-9012 (Tex. Feb. 27, 2026). The summary judgment motions at issue in this case were both filed before March 1, 2026, and therefore the amendments do not apply to this case. The citations to Rule 166a in this opinion are to the version of the rule in effect prior to March 1, 2026.

P. 166a(i). We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor. *Wal-Mart Stores*, 663 S.W.3d at 576 (quotation omitted). If the nonmovant brings forth more than a scintilla of evidence raising a fact issue, summary judgment is improper. *Id.*

## B. Governing Law on Negligent Misrepresentation

Negligent misrepresentation bases liability not on the breach of duty that a professional owes their clients or others in privity, "but on an independent duty to the nonclient based on the professional's manifest awareness of the nonclient's reliance on the misrepresentation and the professional's intention that the nonclient so rely." *McCamish, Martin, Brown & Loeffler v. F.E. Appling Ints.*, 991 S.W.2d 787, 792 (Tex. 1999). To prevail on a claim for negligent misrepresentation, the plaintiff must show: (1) the defendant made a representation in the course of its business or in a transaction in which it has a pecuniary interest; (2) the representation conveyed false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the information. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653–54 (Tex. 2018) (quoting *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). The professional making the representation "must have invited reliance." *Brown & Brown of Tex., Inc. v. Omni*

18

*Metals, Inc.*, 317 S.W.3d 361, 388 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (op. on reh'g).

Justifiable reliance is usually a fact question, but it can be negated as a matter of law when circumstances exist under which reliance cannot be justified. *JPMorgan Chase Bank*, 546 S.W.3d at 654. Courts must consider the nature of the parties' relationship and the contract. *Id.* (quotation omitted). In an arm's length transaction, the party to whom the representation is made "must exercise ordinary care for the protection of his own interests," and "mere confidence in the honesty and integrity of the other party" does not excuse the failure to exercise reasonable diligence. *Id.* (quotations omitted)). Liability may be avoided by setting forth "limitations as to whom the representation is directed and who should rely on it." *McCamish, Martin, Brown & Loeffler*, 991 S.W.2d at 794.

## C. Gaston Did Not Justifiably Rely on the Appraisal Report

In their summary judgment motions, Cardinal and CFour attacked all elements of Gaston's negligent misrepresentation claim, including the element requiring Gaston to demonstrate that she justifiably relied on the allegedly false information included in the appraisal report. On appeal, Gaston points to no evidence in the summary judgment record raising a fact issue on this element. Instead, the evidence establishes the contrary—that any reliance by Gaston on the appraisal report was not justifiable as a matter of law.

In connection with the sale, Ghafoor (on behalf of Findom) completed a form "Seller's Disclosure Notice," which Gaston initialed and signed. Ghafoor disclosed that the property did not have a public sewer system. Instead, it had a "Septic/On-Site Sewer Facility," and its water supply was provided by a well. Ghafoor completed a separate "Information About On-Site Sewer Facility" form, which disclosed that the property had a septic tank and Ghafoor was not aware of any maintenance contract for the septic tank.

The Uniform Residential Loan Application that Gaston signed and submitted to Cardinal contained several "Acknowledgements and Agreements," including an acknowledgement about appraisals and value:

> (3)    The Property's Appraisal, Value, and Condition
>
> •    Any appraisal or value of the property obtained by the Lender is for use by the Lender and Other Loan Participants.
>
> •    The Lender and Other Loan Participants have not made any representation or warranty, express or implied, to me about the property, its condition, or its value.

This section of the application defined "Other Loan Participants" as "any actual or potential owners of a loan resulting from this application"; "acquirers of any beneficial or other interest in the Loan"; "any mortgage insurer"; "any guarantor"; "any servicer of the Loan"; and "any of these parties' service providers, successors or assigns." The application also included an "Amendatory Statement" that informed Gaston that "[t]he appraised valuation is arrived at to determine the maximum

20

mortgage the Department of Housing and Urban Development will insure," but HUD "does not warrant the value or condition of the property," and Gaston "should satisfy" herself "that the price and condition of the property are acceptable." Gaston signed directly under this statement.

Gaston received and signed an "Important Notice to Homebuyers" prepared by HUD. The notice warned Gaston that she should inspect the property herself because HUD did not warrant its condition or value:

> The property you are buying is not HUD/FHA approved and HUD/FHA does not warrant the condition or the value of the property. An appraisal will be performed to estimate the value of the property, but this appraisal does not guarantee that the house is free of defects. You should inspect the property yourself very carefully or hire a professional inspection service to inspect the property for you.

In addition to this notice, Gaston received (and signed) a warning from HUD and FHA providing further information about why she needed a home inspection before completing the purchase:

> For Your Protection:
> Get a Home Inspection
>
> **Why a Buyer Needs a Home Inspection**
>
> A home inspection gives the buyer more detailed information about the overall condition of the home prior to purchase. In a home inspection, a qualified inspector takes an in-depth, unbiased look at your potential new home to:
>
> > Evaluate the physical condition: structure, construction, and mechanical systems; Identify items that need to be repaired or replaced; and Estimate the remaining useful life of the major systems, equipment, structure, and finishes.

### You Must Ask for a Home Inspection

A home inspection will only occur if you arrange for one. FHA does not perform a home inspection.

Decide early. You may be able to make your contract contingent on the results of the inspection.

### Appraisals are Different from Home Inspections

An appraisal is different from a home inspection and does not replace a home inspection. Appraisals estimate the value of the property for lenders. An appraisal is required to ensure the property is marketable. Home inspections evaluate the condition of the home for buyers.

### FHA Does Not Guarantee the Value or Condition of your Potential New Home

If you find problems with your new home after closing, FHA cannot give or lend you money for repairs, and FHA cannot buy the home back from you. Ask a qualified home inspector to inspect your potential new home and give you the information you need to make a wise decision.

. . . .

### Be an Informed Buyer

It is your responsibility to be an informed buyer. You have the right to carefully examine your potential new home with a qualified home inspector. To find a qualified home inspector ask for references from friends, realtors, local licensing authorities and organizations that qualify and test home inspectors.

Gaston heeded the warnings given to her by HUD and the FHA, and she hired a third-party inspector who inspected the property and prepared a report. The inspection revealed numerous problems with the property, including a problem with the motor for the water well. Gaston acknowledged in her deposition that she had a conversation with the inspector, who told her that she needed to have Ghafoor locate

the septic tank on the property. After Gaston negotiated with Findom for some repairs, Findom's contractor located the cap for the septic tank, which was in a front flower bed.

Freese's appraisal report checked that the property had public water and sanitary sewer. The report also included a comment concerning intended users of the report:

> The intended user of the appraisal report is the lender/client only. The intended use is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the stated scope of work, purpose of the appraisal, reporting requirements of this appraisal report form, and definition of market value. No additional intended use or users are identified by the appraiser.
>
> The appraiser has not identified any purchaser, borrower or seller as an intended user of this appraisal and no such party should use or rely on this appraisal for any purpose. Such parties are advised to obtain an appraisal from an appraiser of their own choosing if they require an appraisal for their own use. This appraisal report should not serve as the basis for any property purchase decision or any appraisal contingency in a purchase agreement relating to the property.

Gaston received a copy of the appraisal report from her realtor before the purchase closed, but "[t]he only thing [she] read was that it met value" and Cardinal would loan the money. She did not read any other portion of the report at that time.[3]

Gaston submitted evidence in response to Cardinal's summary judgment motion. Her evidence included:

---

[3] In her original petition, Gaston alleged that she did not discover Freese's error in the appraisal report until October 23, 2021, after she began experiencing problems with the plumbing and sewer system.

- FHA "Valuation Protocol" for various types of properties, which contained a statement that existing construction must comply with HUD's Minimum Property Requirements and the lender must determine what repairs must be made "for the property to be eligible for FHA-insured financing";[4]

- HUD guidelines relating to "Property Valuation and Appraisals," which similarly stated that existing construction must meet certain minimum requirements for FHA financing;

- HUD's "Conditional Commitment Direct Endorsement Statement of Appraised Value," which contained the estimated value of the property, a "[c]onditional commitment for mortgage insurance," and a statement warning that appraisal "does not guarantee that the house is free from defects" and homebuyers should obtain their own inspection;

- A certification by a Cardinal representative that the mortgage complies with HUD guidelines "to the extent that no defect exists that would have changed the decision to endorse or submit the mortgage for insurance";

- An email Gaston sent to Cardinal with statements from her congressman's office relating to the requirement that Cardinal complete a second appraisal of the property upon Gaston's request and HUD guidelines concerning the review process;

- FHA's "Defect Taxonomy," which "is FHA's method of identifying defects at the loan level," such as fraudulent or misrepresented information, and describes remedies for loan defects;

- HUD's notice to Freese of deficiencies in the appraisal report and its requirement that she undergo remedial education;

- A "Lender Self-Report List Summary," in which Cardinal reported the inaccuracies in the appraisal report to HUD in December 2021, and a "Loan Review System (LRS) Review

---

[4] This document also included statements that "[t]he intended use for all appraisals prepared for FHA is to support the underwriting requirements for an FHA-insured mortgage," FHA appraisals "are no guarantee that the property is free from defects," and buyers should obtain their own home inspections.

24

Summary" that included a finding that "FHA has taken the appropriate actions and has determined that Cardinal Financial could not have known about the well and septic prior to closing";

- A diagram of the property; and

- A response from the Better Business Bureau after Gaston complained about Class Valuation.

None of this evidence implicates whether Gaston justifiably relied on the incorrect information in the appraisal report in purchasing the property.

The summary judgment evidence establishes that Freese inaccurately reported that a public water and sewer system serves the property. However, the evidence also establishes that Ghafoor and Findom disclosed the presence of a well and septic tank on the property; Gaston received several warnings that an appraisal was for Cardinal's use only and Cardinal made no representations about the property's condition or value; the appraisal report itself stated that only Cardinal was an intended user of the report; Gaston received numerous warnings that she should obtain her own inspection of the property prior to closing, which she did; an inspection report informed her of a problem with the well motor; a Findom contractor showed her the cap for the septic tank; and she did not read the portion of the appraisal report containing the inaccurate information about the water and sewer system before closing on the property. This evidence negates justifiable reliance on the inaccuracies in the appraisal report as a matter of law. *See JPMorgan Chase Bank*, 546 S.W.3d at 654; *see also McCamish, Martin, Brown & Loeffler*, 991

S.W.2d at 794 ("This formulation [of negligent misrepresentation in Restatement (Second) of Torts section 552] limits liability to situations in which the attorney who provides the information is aware of the nonclient and *intends that the nonclient rely* on the information.") (emphasis added).

To the extent Gaston argues that she can establish the reliance element of her negligent misrepresentation claim based on *Cardinal's* reliance on the inaccuracies in deciding to approve the loan, courts have held that reliance does not stretch so far. *See Va. Oak Venture, LLC v. Fought*, 448 S.W.3d 179, 186–87 (Tex. App.— Texarkana 2014, no pet.) (affirming summary judgment in favor of appraiser on negligent misrepresentation claim when property buyer did not receive draft appraisal report purportedly containing misrepresentations until after closing and refusing to allow buyer to rely upon lender's reliance on appraiser, stating that "[s]tretching reliance through another party in that fashion is not supported by the law"); *see also Van Pelt v. Guild Mortg. Co.*, No. 1:21-CV-068-H, 2022 WL 2053181, at *7 (N.D. Tex. June 7, 2022) (stating, while analyzing whether property buyers' fraud and DTPA claims were barred by limitations, that appraisal report "clearly indicates" that its intended user was lender, purpose of appraisal was for lender and FHA "to protect their collateralized interests in underwriting and insuring the loan," and while purchasers could examine report "as an additional datapoint in their pre-closing due diligence, the appraisal is not even close to guaranteeing the

structural soundness of the house to the buyer in any way"). We likewise decline to do so.

We conclude that Gaston has not raised a fact issue on whether she justifiably relied on the statement in the appraisal report that the property was subject to public water and sewer. We therefore hold that the trial court did not err by granting summary judgment to Cardinal and CFour on Gaston's negligent misrepresentation claim.

We overrule Gaston's first issue.

## Conclusion

We affirm the trial court's orders granting summary judgment in favor of Cardinal and CFour and its order granting Cardinal's nonsuit of CFour, Ghafoor, and Findom. All pending motions are denied.[5]

David Gunn
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.

---

[5] Although represented by counsel on appeal, Gaston filed three reply briefs and multiple motions pro se. Cardinal moved to strike Gaston's pro se filings, arguing that she was represented by counsel who filed an appellate brief on her behalf, and she is not entitled to hybrid representation. We decline to strike Gaston's pro se filings. We consider her pro se reply briefs to the extent that they support the arguments made in her opening brief, but we do not consider new arguments and issues raised for the first time in the reply briefs. *See Marshall v. MarOpCo, Inc.*, 714 S.W.3d 724, 774 n.35 (Tex. App.—Houston [1st Dist.] 2025, pet. filed) ("To the extent that appellants raise arguments in their reply brief, not previously contained in their opening brief, it is improper to do so."); *McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court.").